THIRD DIVISION
August 29, 2007

No. 1-05-2910

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04CR1493 |
| | ) | |
| VINCENT BUCKNER, | ) | The Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial, defendant Vincent Buckner was found guilty of predatory criminal sexual assault and aggravated criminal sexual assault and was sentenced to 30 years in prison. On appeal, defendant contends that the trial court erred in granting the State's motion *in limine* to bar defendant from cross-examining the State's DNA analyst witness regarding the fact that she had pled guilty to theft of unearned overtime pay and, at the time of trial, was serving an 18- month term of supervision. Defendant further contends that the trial court erred in denying his motion for new trial which alleged that his due process and fair trial rights were violated when the State failed to disclose to defendant that the DNA analyst had collected one hour of unearned overtime pay on the day she tested the DNA at issue in this case. We affirm.

Prior to trial, defendant indicated to the court that he did not want the public defender to represent him. Defendant was permitted to proceed *pro se*.

In a supplemental answer to a discovery request by defendant, the State indicated that Amy Rehnstrom, the DNA analyst who had profiled the relevant DNA in this case, had been

indicted for felony theft of unearned overtime pay, had pled guilty to misdemeanor theft on October 8, 2004, and had been sentenced to 18 months of misdemeanor supervision and was ordered to make restitution, resign from her position and perform community service.

Rehnstrom's indictment, which supplements the record on appeal, indicated that on September 24, 2004, she was charged with felony theft for a period that commenced on May 3, 2004, and continued through June 3, 2004.

At trial, the victim, L.D., testified that in the summer of 2001, when she was 11 years old, defendant, a friend of her mother's, took L.D. and her brothers to a carnival and then to his house to spend the night. That night, defendant sat on the couch next to L.D. and touched her chest and "private area." A few weeks later, defendant took L.D. to a party and then back to his house, where he had sexual intercourse with her. In November 2001, L.D. went to the store defendant owned. Defendant had sexual intercourse with L.D. in the back room of the store. In February 2002, L.D. was babysitting for defendant and his girlfriend's child. Defendant put an adult movie on the television and had sexual intercourse with his girlfriend while L.D. lay next to them on the bed and then had sexual intercourse with L.D.

In May 2002, L.D. went to the doctor and was told that she was pregnant. She gave birth to a son on August 16, 2002. She was 12 years old.

Defendant testified on his own behalf that in 2001, L.D.'s mother invited him to dinner. At dinner he had "too much to drink" and fell asleep on the couch. When he woke the next morning, defendant saw L.D. in the bathroom. L.D. told defendant that "I got me some last night" and that "I got me some from you last night." A few months later, defendant learned that

L.D. was pregnant. Defendant denied that the sexual encounters L.D. had testified to had ever occurred. Defendant's friend testified that he had seen defendant drunk and passed out.

Buccal swabs were taken from L.D., her son and defendant. The swabs were sent for DNA testing.

Prior to offering Rehnstrom's testimony, the State moved *in limine* to bar defendant from cross-examining her concerning her theft indictment, plea or sentence. The motion maintained that the investigation into Rehnstrom's theft had commenced during the pendency of defendant's case, that she had tested the DNA in this case in November 2003, that she was indicted for theft occurring in May and June 2004 and that she received a period of supervision, which she was serving at the time of trial, in October 2004. The trial court granted the motion.

Rehnstrom testified that she received DNA kits from L.D., her son and defendant, profiled the DNA from those kits on November 3, 2003, and faxed the resulting DNA profiles to a laboratory in North Carolina for interpretation.

Meghan Clement, an employee of the North Carolina lab, testified that she analyzed the DNA profiles and determined that there was a 99.9% probability that defendant was L.D.'s son's father.

Thereafter a warrant was issued for defendant's arrest and he was eventually arrested in Iowa.

The jury found defendant guilty of predatory criminal sexual assault and aggravated sexual assault of a child. The court then appointed, with defendant's consent, a public defender to prepare a motion for new trial and sentencing.

In his motion for new trial, defendant argued that the court erred in barring him from cross-examining Rehnstrom about her guilty plea and supervision sentence because that line of questioning would expose her bias, interest and motive to testify falsely. Defendant further argued the State had violated Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), and Supreme Court Rule 412 (188 Ill. 2d R. 412) when it failed to disclose to defendant that Rehnstrom had collected unearned overtime pay on the day that she profiled the DNA in this case.

To the motion, defendant attached an Illinois State Police investigation summary. The summary indicated that Rehnstrom's group supervisor had suspected Rehnstrom of submitting documents indicating that she was entitled to overtime pay when, in fact, she had not worked overtime in May and early June 2004. On June 8, 2004, the supervisor notified the State Police of her suspicions. On August 5, 2004, the police interviewed Rehnstrom. Rehnstrom admitted to documenting unearned overtime in 2003 and 2004 and estimated that one-third to one-half of the overtime that she had collected in the previous two years had not been earned. The summary indicated that on November 3, 2003, Rehnstrom had collected one unearned hour of overtime pay.

The court denied the motion for new trial and, after hearing evidence in mitigation and aggravation, sentenced defendant to 30 years in prison.

On appeal, defendant first contends that the trial court erred in barring him from cross-examining Rehnstrom concerning her guilty plea to theft and sentence of supervision. He argues that because Rehnstrom was under supervision at the time of trial, she may have had a bias,

1-05-2910

interest or motive to testify falsely.

As a point of clarification, we note that there is a distinction between offering proof of a witness's conviction of a crime to impeach that witness's credibility and the use of a witness's arrest or charge as evidence of that witness's bias, interest of motive to testify falsely. People v. Sharrod, 271 Ill. App. 3d 684, 689 (1995), citing Davis v. Alaska, 415 U.S. 308, 316, 39 L. Ed. 2d 347, 353-54, 94 S. Ct. 1105, 1110 (1974). As a general rule, a defendant may cross-examine a witness who has pled guilty to misdemeanor theft, a crime of dishonesty, about that conviction to impeach the witness's credibility. People v. Spates, 77 Ill. 2d 193, 202-03 (1979). However, when, as in this case, the witness has pled guilty to theft and is serving a sentence of supervision, which if successfully completed will result in dismissal of the charge (730 ILCS 5/5-1-21 (West 2004)), such cross-examination is prohibited. People v. Williams, 127 Ill. App. 3d 231, 234 (1984) ("[A] witness may not be impeached by the mere fact that he was on supervision. *** [S]upervision [is] effectively the same as having a criminal charge pending"). Neither party has raised any argument regarding this issue on appeal.

"The trial court has discretion to impose reasonable limits on cross-examination to limit possible harassment, prejudice, jury confusion, witness safety, or repetitive and irrelevant questioning, and we review a defendant's claim of a violation of the confrontation clause under the abuse-of-discretion standard." People v. Tabb, 1-05-1640, slip op. at 13 (June 14, 2007), citing People v. Blue, 205 Ill. 2d 1, 13-14 (2001).

The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. "This

5

right has been made obligatory on the States through the fourteenth amendment [citation] and includes the right to cross-examine a witness as to the witness' biases, interests, or motives to testify." People v. Triplett, 108 Ill. 2d 463, 474 (1985). Pursuant to the confrontation clause, even if a witness's arrest or charges are not admissible to generally impeach that witness's credibility, a defendant may inquire into the fact that a witness has been arrested or charged with a crime where it would reasonably tend to show that the witness's testimony might be influenced by an interest, bias or motive to testify falsely. People v. Bull, 185 Ill. 2d 179, 206 (1998). However, the evidence must give rise to the inference that the witness has something to lose or gain by testifying and must be timely, unequivocal and directly related to the witness's testimony. People v. Sims, 192 Ill. 2d 592, 625 (2000). Put another way, the evidence of interest, bias or motive to testify falsely may not be speculative, remote or uncertain. Bull, 185 Ill. 2d at 206-07.

In Bull, the State's DNA expert had performed the relevant DNA tests in 1993. In January 1995, the State Police crime lab brought administrative charges against the expert, accusing him of stealing a microscope. In May 1995, the expert and the State Police entered a settlement that provided that the expert would not be discharged but would be suspended without pay, would serve community service and would forfeit accrued vacation time. Trial took place one year after the expert was disciplined. Prior to the expert's testimony, the trial court granted the State's motion *in limine* to bar the defendant from questioning the expert concerning the incident.

On appeal, the defendant contended that in limiting his cross-examination of the expert concerning a bias, interest or motive to testify falsely, the trial court had violated his sixth

6

amendment right to confrontation. The supreme court noted that the trial took place one year after the expert had been disciplined and that, in any case, the expert's testimony was based entirely on the testing and report he had completed three years before trial, two years before the state police had filed the theft charge against the expert. Accordingly, the supreme court found that the disciplinary action against the expert was too speculative and remote to infer that the expert had something to lose or gain by testifying and that the court, therefore, properly granted the State's motion *in limine*.

In Sims, the defendant was tried in Saint Clair County. The State's DNA expert had performed the relevant DNA tests between November 1994 and March 1995. While the testing was being performed, on January 7, 1995, the expert and the Springfield police entered a pre-disciplinary agreement on charges that the expert had stolen a microscope from the State Police lab. Pursuant to the agreement, the expert was suspended, was required to complete community service and forfeited accrued vacation time. In August 1997, when he testified in the Sims case, the expert had completed the terms of the agreement and was considered an employee in good standing. Prior to the expert's testimony, the trial court granted the State's motion *in limine* to bar the defendant from questioning the expert concerning the disciplinary incident.

On appeal, the defendant contended that in doing so the court had violated his sixth amendment right to confront his accuser. The supreme court noted that the defendant's theory was that the expert had motivation to fabricate the DNA results to which he testified to implicate the defendant because at the time of testing he was facing disciplinary action. The court noted that, in order for that theory to be valid, it would have to assume that the expert's reaction to his

theft being discovered would be to fabricate evidence in the case on which he was currently working, that the expert would risk fabricating evidence even though he did not know if the defendant's case would be tried or if some other outcome would occur, that the expert would fabricate evidence even though he did not know if he would be called to testify in the defendant's case, that the expert would fabricate evidence even though doing so would help the case of the Saint Clair County prosecutors with no control over the discipline procedures in the Springfield crime lab, and that the expert would fabricate evidence in order to gain leniency even though the crime lab was unlikely to look favorably on an employee fabricating evidence. In light of those assumptions, the supreme court found that the alleged incentive on the expert's part to fabricate DNA evidence because of the disciplinary proceedings against him was remote and uncertain. Accordingly, the court found that the trial court did not err in granting the State's motion *in limine*.

While neither of these cases is exactly analogous to the case at bar, both support our conclusion that the trial court did not err in barring defendant from cross-examining Rehnstrom concerning the disciplinary actions against her. In this case, Rehnstrom profiled defendant's, L.D.'s and her son's DNA on November 3, 2003. She was charged with theft on September 24, 2004. When she testified at defendant's trial, Rehnstrom was serving a term of suspension resulting from her guilty plea to a misdemeanor theft charge.

As in Bull, in this case, Rehnstrom profiled defendant's, L.D.'s and her son's DNA almost a year before she was charged. Her testimony related solely to the circumstances of that profiling procedure. Moreover, Rehnstrom did not testify that the result of the profiling was a conclusion

that defendant was L.D.'s son's father. Instead, after profiling the DNA, Rehnstrom faxed her results to a different laboratory for analysis. Additionally, as in Sims, if we were to accept defendant's theory that Rehnstrom was motivated to testify falsely to garner leniency from the State, we would have to assume that Rehnstrom knew she was being investigated on November 3, 2003, or that she would eventually be disciplined for her ongoing collection of unearned overtime pay, that her reaction to that knowledge would be to fabricate evidence in defendant's case despite the fact that she did not know if defendant's case would be tried or if she would be called to testify, that she would fabricate evidence even though, if she were found out she would likely face additional disciplinary action, and, most significantly, that it was even possible for Rehnstrom to falsely profile defendant's, L.D.'s or her son's DNA. Quite simply, given the facts of this case, the evidence that Rehnstrom was motivated or even had the ability to testify falsely in order to garner leniency from the State is entirely too speculative and uncertain for us to hold that the trial court abused its discretion in granting the State's motion *in limine*.

Defendant next contends that the trial court erred in refusing to grant defendant a new trial when the State committed a Brady and Supreme Court Rule 412 violation.

When a defendant argues that his due process rights and right to a fair trial were violated by the State's failure to disclose certain evidence in discovery, we review the trial court's ruling on the matter for an abuse of discretion. People v. Matthews, 299 Ill. App. 3d 914, 918 (1998).

In Brady, the United States Supreme Court held that due process requires that a state disclose to a criminal defendant evidence that could negate guilt. People v. Sharrod, 271 Ill. App. 3d 684, 688 (1995). This rule was codified by the Illinois Supreme Court in Supreme Court Rule

9

412. <u>Sharrod</u>, 271 Ill. App. 3d at 688. Evidence that tends to cast doubt on the credibility of a witness tends to negate a defendant's guilt. <u>Sharrod</u>, 271 Ill. App. 3d at 688. Among the evidence that the State should disclose are a witness's prior convictions, probationary status, and juvenile adjudications and any pending criminal charges against a witness. <u>People v. Williams</u>, 329 Ill. App. 3d 846, 858 (2002). To succeed on a <u>Brady</u> claim, a defendant must demonstrate (1) that the evidence that was withheld is favorable to the defendant in that it is either exculpatory or impeaching, (2) that the evidence was either wilfully or inadvertently suppressed by the State and (3) that prejudice to the defendant ensued. <u>Williams</u>, 329 Ill. App. 3d at 857. More specifically, concerning the third factor, in order to constitute a <u>Brady</u> violation:

"[T]he evidence must be material to guilt or punishment. [Citation.] Evidence is material only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." <u>People v. Rish</u>, 344 Ill. App. 3d 1105, 1111 (2003).

Because defendant was not prejudiced by the State's withholding of the investigation summary, which indicated that Rehnstrom had collected one hour of unearned overtime pay on the day that she profiled defendant's, L.D.'s and her son's DNA, we find that defendant has failed to state a <u>Brady</u> or Rule 412 violation. L.D. testified to several instances in which defendant and she had engaged in sexual intercourse. According to L.D., one such instance occurred nine months before she gave birth to her son at age 12. Defendant did not deny paternity of L.D.'s son. Instead, his theory of defense was that, though he may have fathered L.D.'s son, he did so

unintentionally while he was unconscious. Even if defendant had known that Rehnstrom had reported an unearned hour of overtime on the day that she profiled the DNA in this case and had been permitted to question Rehnstrom regarding that bad act, calling into question the quality of her work and raising a possible motive to testify falsely, given the overwhelming evidence of defendant's guilt and the fact that he did not deny paternity of L.D.'s son, we cannot say that there is a reasonable probability that the outcome of defendant's trial would have been different.

For these reasons, we affirm the judgment of the trial court.

Affirmed.

KARNEZIS and CUNNINGHAM, JJ., concur.