2021 IL App (1st) 192179-U

FIFTH DIVISION
DECEMBER 23, 2021

No. 1-19-2179

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 1493 |
| | ) | |
| VINCENT BUCKNER, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's judgment denying the defendant leave to file his successive postconviction petition is affirmed.

¶ 2    On July 11, 2019, the defendant-appellant, Vincent Buckner, filed a *pro se* motion for leave to file a successive postconviction petition in the circuit court of Cook County, alleging that a *Brady* violation occurred during his trial. The circuit court denied the defendant leave to file his successive postconviction petition and the defendant now appeals. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4     In 2004, the defendant was charged with predatory criminal sexual assault and aggravated criminal sexual assault. Prior to his jury trial, the defendant indicated to the court that he did not want the public defender to represent him. The defendant was permitted to proceed *pro se.*

¶ 5     At trial, the victim, L.D., testified that in the summer of 2001, when she was 11 years old, the defendant, a friend of her mother's, took L.D. and her brothers to a carnival and then to his house to spend the night. That night, the defendant sat on the couch next to L.D. and touched her chest and "private area." A few weeks later, the defendant took L.D. to a party and then back to his house, where he had sexual intercourse with her. In November 2001, L.D. went to the store the defendant owned. The defendant had sexual intercourse with L.D. in the back room of the store. In February 2002, L.D. was babysitting for the defendant and his girlfriend's child. The defendant put an adult movie on the television and had sexual intercourse with his girlfriend while L.D. lay next to them on the bed. The defendant then had sexual intercourse with L.D.

¶ 6     In May 2002, L.D. went to the doctor and was told that she was pregnant. She gave birth to a son on August 16, 2002. She was 12 years old.

¶ 7     A forensic analyst testified that she received DNA kits from L.D., her son, and the defendant. She then profiled the DNA from those kits and faxed the resulting DNA profiles to a laboratory in North Carolina for interpretation. An employee of the North Carolina lab testified that she analyzed the DNA profiles and that there was a 99.9% probability that the defendant was the father of L.D.'s son.

¶ 8   The defendant testified on his own behalf. He testified that, in 2001, L.D.'s mother invited him over for dinner. At dinner, the defendant had "too much to drink" and fell asleep on the couch. When he awoke the next morning, the defendant saw L.D. in the bathroom. L.D. told the defendant; that "I got me some last night," and "I got me some from you last night." The defendant ran out of the house. A few months later, the defendant learned that L.D. was pregnant.

¶ 9   The defendant denied the sexual encounters to which L.D. testified. On cross-examination, the State asked the defendant, "So, you did have sexual intercourse with her?" The defendant answered, "Well according to the results of the DNA, it could be factual." The State then asked, "So that would mean if the DNA is right, you had sex with a 12-year old girl, correct?" to which he responded, "yes." The defendant also stated that he would have liked to have the DNA test done by someone of his own choosing, but "as I said I haven't argued the results."

¶ 10   At the conclusion of trial, the jury found the defendant guilty of predatory criminal sexual assault and aggravated sexual assault of a child. He was subsequently sentenced to 30 years' imprisonment.

¶ 11   On direct appeal, this court affirmed the defendant's conviction and sentence. *People v. Buckner*, 376 Ill. App. 3d 251, 259 (2007).

¶ 12   The defendant filed an initial *pro se* postconviction petition on December 16, 2008. He attached, to the petition, an affidavit allegedly written and signed by L.D., in which she averred that she took advantage of the defendant sexually while he was intoxicated. On March 4, 2009, the trial court dismissed the petition as frivolous and patently without merit. This court affirmed the dismissal, noting that even if the affidavit were taken as true, "it still established that [the] defendant had sexual intercourse with an 11-year-old." *People v. Buckner*, 409 Ill. App. 3d 1152

(2011) (unpublished order pursuant to Supreme Court Rule 23). We further stated that, "it is well established that L.D., 11 years old at the time, lacked the capacity to consent to sexual activity with an adult," and that she did "not necessarily recant her testimony in her affidavit. This indicates that sexual intercourse occurred between the two, a conclusion that is supported by DNA results." *Id.*

¶ 13    On January 29, 2016, the defendant filed a motion for leave to file a successive postconviction petition, which the trial court denied. The defendant appealed, and appointed appellate counsel moved to withdraw pursuant to *Pennsylvania* v. *Finley,* U.S. 551 (1987). On May 4, 2018, this court granted counsel's motion to withdraw and affirmed the trial court's judgment denying the defendant's motion. *People v. Buckner*, No. 1-16-1194 (unpublished order pursuant to Supreme Court Rule 23).

¶ 14    On July 11, 2019, the defendant filed a *pro se* motion in the trial court seeking to file a successive postconviction petition, which is the subject of this appeal. In his petition attached to the motion, he alleged, *inter alia*, that a *Brady* violation occurred during his trial. Specifically, and relevant to this appeal, the defendant's petition stated that on January 21, 2019, he received a box of "legal mail," including "newly discovered documents" from an investigator. According to the defendant, some of the documents showed that, prior to his trial, L.D.'s mother applied for and received a financial award from a crime victims compensation fund. He attached to the petition, a document he purported to be L.D.'s mother's application and a document which purported to show that L.D.'s mother was awarded $20,256.25 by the Illinois court of claims. The defendant averred that the State never disclosed the financial award to him before his trial. He argued that the non-disclosure constituted a *Brady* violation. He claimed that the financial award affected L.D.'s

credibility, as it could have influenced her testimony in favor of the State, and he could have used it to impeach her had he known about it.

¶ 15    On August 23, 2019, the trial court entered an order denying the defendant's motion for leave to file his successive postconviction petition. The trial court ruled that the defendant had failed to demonstrate prejudice. The court's order stated:

> "In the instant petition, [the defendant] additionally makes new speculative allegations that L.D. received 'undisclosed financial awards from the State, because L.D.'s mother filled out a 'Crime Victims Compensation Application' in 2002, when L.D. was 12 years old and six months pregnant. [The defendant] additionally attacks the veracity of the information in the application and makes unsupported claims of fraud. Here, [the defendant's] claims are merely bald, conclusory allegations, and thus, will not prevail on post-conviction review."

This appeal followed the trial court's ruling.

¶ 16                                            ANALYSIS

¶ 17    We note that we have jurisdiction to consider this matter, as the defendant filed a timely notice of appeal. Ill. S. Ct. Rs. 606, 651(a) (eff. July 1, 2017).

¶ 18    The defendant presents the following issue for our review: whether the trial court erred in denying him leave to file his successive postconviction petition. The defendant argues that he adequately pled a *Brady* violation, of which he only recently learned. He argues that when the State failed to disclose that L.D.'s mother applied for and received a financial award from a crime victims compensation fund, a *Brady* violation occurred. He claims that, had he been aware of the financial award, which created a motive for L.D. to testify in favor of the State, he could have used

it to impeach L.D. and establish to the jury that her testimony was biased. As L.D. was "the State's main witness and her credibility was critical to the State's case," the defendant asserts that the State violated *Brady* by suppressing the financial award evidence and that he was consequently prejudiced. The defendant asks us to vacate the trial court's judgment denying him leave to file his successive postconviction petition and remand this case for further postconviction proceedings.

¶ 19    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a method by which convicted persons under a criminal sentence can assert that their constitutional rights were violated. 725 ILCS 5/122-1 (West 2018); *People v. Allen*, 2019 IL App (1st) 162985, ¶ 29. The Act generally contemplates the filing of only one postconviction petition, and any claim not presented in the initial petition is subsequently forfeited. 725 ILCS 5/122-1(f) (West 2018); *Allen*, 2019 IL App (1st) 162985, ¶ 29. However, a court may grant a defendant leave to file a successive postconviction petition if he demonstrates cause for failing to raise the claim in his earlier petition and prejudice resulting from that failure. 725 ILCS 5/122-1(f) (West 2018); *Allen*, 2019 IL App (1st) 162985, ¶ 32. Under this cause-and-prejudice test, a defendant must establish *both* cause and prejudice. *Allen*, 2019 IL App (1st) 162985, ¶ 32. " 'Cause' is established when the defendant shows that 'some objective factor external to the defense impeded his ability to raise the claim' in his original postconviction proceeding." *Id.* (quoting *People v. Tenner*, 206 Ill. 2d 381, 393 (2002)). And " '[p]rejudice' is established when the defendant shows that the 'claimed constitutional error so infected his trial that the resulting conviction violated due process.' " *Id.* (quoting *Tenner*, 206 Ill. 2d at 393). If the defendant makes a *prima facie* showing of cause and prejudice, the court should grant the defendant leave to file his successive postconviction petition. *People v. Ames*, 2019 IL App (4th) 170569, ¶ 13. Still, "a defendant faces immense procedural

default hurdles when bringing a successive postconviction petition." *People v. Davis*, 2014 IL 115595, ¶ 14. "Leave of court to file a successive petition should be denied when it is clear from a review of the successive petition and supporting documents that the claims raised fail as a matter of law or are insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35. This court reviews the denial of a defendant's motion for leave to file a successive postconviction petition *de novo*. *Ames*, 2019 IL App (4th) 170569, ¶ 11.

¶ 20    The defendant's instant petition is based upon an alleged *Brady* violation. Pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), the State is required to disclose exculpatory evidence to the defendant. *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶ 68. To establish a *Brady* violation, a defendant must show that: (1) the undisclosed evidence is favorable to the defendant because it is either exculpatory or impeaching; (2) the evidence was suppressed by the State either willfully or inadvertently; and (3) the defendant was prejudiced because the evidence is material to guilt or punishment. *Id.*

¶ 21    The defendant in this case claims that he could have used the financial award for which L.D.'s mother applied and received, to impeach L.D. More specifically, he argues that through such an impeachment, he could have established to the jury that L.D.'s testimony was biased. He bases this argument on the theory that there was a financial motive for L.D. to testify in favor of the State. This specious argument assumes that *L.D. was aware* that her mother had applied for a financial award from a crime victims compensation fund. Notably, the defendant did not provide any support for the contention that L.D. had knowledge of her mother's financial award and that fact cannot be inferred. It is well established that impeachment evidence, which is used to show bias, cannot be remote or uncertain. *People v. Triplett*, 108 Ill. 2d 463, 475–76 (1985). Under

these facts and circumstances, it is entirely speculative to assume that the trial court would have even allowed the defendant to attempt to impeach L.D. because of her mother's alleged financial award from the crime victims compensation fund.

¶ 22    Further, even assuming that during the defendant's trial, he had been aware of the financial award and was allowed to use it to impeach L.D., it cannot be said that such evidence was material to his conviction. There was other overwhelming evidence of his guilt, *i.e.,* the DNA evidence proving that the defendant is the father of the baby to which L.D. gave birth when she was 12 years old. "Evidence is material where a reasonable probability exists that disclosure of the evidence would have resulted in a different outcome." *People v. Roman*, 2016 IL App (1st) 141740, ¶ 18. Considering the DNA evidence in this case, coupled with L.D.'s testimony, the defendant's guilt was established. Evidence of the financial award would not have produced a different verdict. Simply put, even if L.D. had a financial motive to testify in favor of the State, that does not change the fact that DNA evidence proved that the defendant had sexual intercourse with L.D. when she was 11 years old. See *id* (impeachment evidence will not be considered material where the State's remaining evidence is strong enough to preserve confidence in the verdict). Because the financial award evidence, which the defendant alleges was suppressed by the State, was not material to his guilt, the defendant was not prejudiced pursuant to *Brady*.

¶ 23    In sum, the defendant failed to plead facts to establish that a *Brady* violation occurred during his trial. Consequently, he cannot establish the prejudice prong of the cause-and-prejudice test, which is required in order to file a successive postconviction petition. The trial court properly denied the defendant leave to file his successive postconviction petition on those grounds. We accordingly affirm the trial court's judgment.

¶ 24                                CONCLUSION

¶ 25    For the foregoing reasons, we affirm the circuit court of Cook County's judgment denying the defendant leave to file a successive postconviction petition.

¶ 26    Affirmed.