THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EUGENE D. DAVIS, Defendant-Appellant.

Fourth District    No. 4—00—0322

Opinion filed November 13, 2003.—Rehearing denied December 15, 2003.

Daniel D. Yuhas and Martin J. Ryan, both of State Appellate Defender's Office, of Springfield, for appellant.

Frank Young, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

This case requires this court, in part, to determine whether allegedly improper probationary conditions may be challenged as void years later in an appeal from the revocation of a defendant's probation. On the facts of this case, we hold they may not.

## I. PROCEDURAL HISTORY

In September 1996, defendant, Eugene D. Davis, pleaded guilty in case No. 96—CF—198 to delivery of a controlled substance on public housing property (a Class 1 felony) (720 ILCS 570/401(d), 407(b)(2) (West 1996)), and the trial court sentenced him to 48 months' probation, subject to various conditions, including that defendant serve 354 days of periodic imprisonment with work release.

In July 1998, the State charged defendant in case No. 98—CF—381 with (1) one count of possession of a controlled substance (720 ILCS 570/402(c) (West 1998)), (2) two counts of criminal trespass to State-supported property (720 ILCS 5/21—5 (West 1998)), and (3) one count of violating an order of protection (720 ILCS 5/12—30 (West 1998)).

In July 1999, the State filed a petition to revoke defendant's probation in case No. 96—CF—198, alleging that he failed to (1) report to his probation officer between February 1999 and June 1999 and (2) pay his monthly probation service fee.

In September 1999, the State charged defendant in case No. 98—CF—422 with retail theft (subsequent offense) (720 ILCS 5/16A—3(a) (West 1998)).

In October 1999, (1) a jury convicted defendant of possession of a controlled substance (720 ILCS 570/402(c) (West 1998)) in case No. 98—CF—381, and (2) the trial court found that defendant had violated his probation in case No. 96—CF—198 but reserved ruling on whether to revoke probation until the sentencing hearing. In December 1999, defendant pleaded guilty to retail theft in case No. 99—CF—422.

Later in December 1999, the trial court conducted a sentencing hearing on case Nos. 96—CF—198, 98—CF—381, and 99—CF—422. At the conclusion of that hearing, the court sentenced defendant as follows: (1) 10 years in prison (with credit for 99 days served) for delivery of a controlled substance on public housing property (720 ILCS 570/401(d), 407(b)(2) (West 1996)) (case No. 96—CF—198); (2) 6 years in prison (with credit for 33 days served) for possession of a controlled substance (720 ILCS 570/402(c) (West 1998)) (case No. 98—CF—381); and (3) 6 years in prison (with credit for 76 days served) for retail theft (720 ILCS 5/16A—3(a) (West 1998)) (case No. 99—CF—422). The court ordered all defendant's sentences to run concurrently.

Defendant appeals, arguing that (1) certain provisions of the trial court's September 1996 periodic imprisonment order are void; (2) the court abused its discretion during defendant's October 1999 jury trial by allowing the State to choose which of defendant's prior convictions would be admitted for impeachment purposes; (3) cumulative errors deprived him of a fair trial; and (4) he is entitled to two additional days of credit against his sentence for time served. We affirm defendant's convictions and sentences as modified but remand for correction of the sentencing order.

## II. DEFENDANT'S APPEAL IN CASE No. 96—CF—198

### A. Background

As previously stated, in September 1996, the trial court sentenced defendant to 48 months' probation. As a condition of probation, the court also ordered that he serve 354 days of periodic imprisonment with work release. Pursuant to the court's order encaptioned "Periodic Imprisonment Order of Distribution of Employment Compensation," the Vermilion County probation department was directed to collect all compensation earned by defendant during the term of his periodic imprisonment and distribute those funds as follows:

"(a) To [Vermilion County] the sum of $5.00 for each day or partial day of incarceration.

(b) To the defendant for necessary travel and incidental expenses. Disbursement shall be made after each pay interval in an amount requested by the defendant and approved by the Probation Department.

(c) To the dependents of the offender in an amount requested by the defendant and approved by the probation officer.

(d) To apply toward fines, costs, fees, and restitution as ordered by the [c]ourt.

(e) To the offender at the completion of his term of sentence any undistributed balance."

## B. Analysis

Defendant argues that three of the five wage distribution provisions set forth in the trial court's order are void. Specifically, he contends as follows: (1) paragraph (b) is void because section 5—7—6(a) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—7—6(a) (West 1996)) authorizes the withholding of income for travel expenses only when those expenses are incurred by the administrator of the offender's imprisonment; (2) paragraph (d) is void because it allows fines, costs, fees, and restitution to be taken out of defendant's paycheck without any of the "limits of process" required by the Code of Civil Procedure (Code) (735 ILCS 5/12—801 through 12—819 (West 1996)); and (3) paragraph (e) is void because it allows the probation department to keep earnings not otherwise used until defendant completes his sentence and, thus, (a) is not authorized by section 5—7—6(a) of the Unified Code (730 ILCS 5/5—7—6(a) (West 1996)), (b) violates the Code, and (c) is not consistent with section 3—13—6 of the Unified Code (730 ILCS 5/3—13—6 (West 1996)).

Defendant concedes that he neither (1) raised a timely objection to the trial court's 1996 periodic imprisonment order nor (2) directly appealed that order. Nevertheless, he contends that because these provisions of the court's order are void, they may be attacked at any time.

■ When a defendant does not file a timely notice of appeal from an order placing him on probation, this court lacks jurisdiction to consider errors in the underlying conviction "unless such errors render the conviction void." *People v. Arnold*, 323 Ill. App. 3d 102, 104, 751 N.E.2d 573, 575 (2001). In *People v. Johnson*, 327 Ill. App. 3d 252, 257, 762 N.E.2d 1180, 1184-85 (2002), this court held that an erroneously imposed condition of probation did not render the defendant's probationary sentence void, and we wrote as follows:

"If defendant had raised the matter on direct appeal, *** only the improper condition *** would have been vacated; the sentence of probation would otherwise stand. A condition of probation improperly imposed does not render the entire order of probation void, it merely renders the condition voidable." *Johnson*, 327 Ill. App. 3d at 257, 762 N.E.2d at 1184-85.

■ Accordingly, we conclude that in this case, the alleged improprieties in the trial court's order of probation and, as a condition

thereof, periodic imprisonment, would constitute voidable errors rather than void judgments. We thus lack jurisdiction to consider those errors in this appeal. See *People v. Stueve*, 66 Ill. 2d 174, 178-79, 361 N.E.2d 579, 581 (1977) (holding that the appellate court lacked jurisdiction to review the defendant's initial judgment of conviction in an appeal from the revocation of his probation); *People v. Morrison*, 298 Ill. App. 3d 241, 244, 698 N.E.2d 671, 673-74 (1998) (holding that the appellate court had no authority on appeal following revocation of probation to review voidable judgment in underlying proceeding).

In so concluding, we offer the following on the distinction between voidable errors and void judgments. In *People v. Davis*, 156 Ill. 2d 149, 155-56, 619 N.E.2d 750, 754-55 (1993), the Supreme Court of Illinois addressed what it means for a judgment to be void and wrote as follows:

"The term 'void' is so frequently employed interchangeably with the term 'voidable' as to have lost its primary significance. Therefore, when the term 'void' is used in a judicial opinion it is necessary to resort to the context in which the term is used to determine precisely the term's meaning. Whether a judgment is void or voidable presents a question of jurisdiction. [Citation.] Jurisdiction is a fundamental prerequisite to a valid prosecution and conviction. Where jurisdiction is lacking, any resulting judgment rendered is void and may be attacked either directly or indirectly at any time. [Citation.] By contrast, a voidable judgment is one entered erroneously by a court having jurisdiction and is not subject to collateral attack. [Citation.]

In Illinois, jurisdiction is conferred by the constitution. [Citation.] Pursuant to article VI, section 9, of our constitution, the circuit courts have jurisdiction over all justiciable matters. (Ill. Const. 1970, art. VI, § 9.) As applied in the context of criminal proceedings, the term 'subject[-]matter' jurisdiction means the power to hear and determine a given case. [Citation.]

Some authorities, including this court, have held that the power to render the particular judgment or sentence is as important an element of jurisdiction as is personal jurisdiction and subject[-]matter jurisdiction. Without such power the judgment or sentence is void. [Citations.] However, jurisdiction or power to render a particular judgment does not mean that the judgment rendered must be the one that should have been rendered, for the power to decide carries with it the power to decide wrong as well as to decide right. [Citations.]

Generally, once a court has acquired jurisdiction, no subsequent error or irregularity will oust the jurisdiction thus acquired. Accordingly, a court may not lose jurisdiction because it makes a

mistake in determining either the facts, the law[,] or both. [Citation.] However, a judgment or decree may be void where a court has exceeded its jurisdiction."

*People v. Arna*, 168 Ill. 2d 107, 113, 658 N.E.2d 445, 448 (1995) (holding that where the requirements for mandatory consecutive sentencing were met, the trial court's imposition of concurrent prison terms was void), is widely cited for the proposition that a sentence that is not authorized by statute is void. However, *Arna* should not be construed as allowing collateral attack of any sentencing error a trial court makes in applying provisions of the Unified Code, especially where—as here—the provisions at issue address matters of an administrative nature rather than the deprivation of liberty. Even in light of *Arna*, questions of voidness remain questions of jurisdiction.

Although trial courts have discretion to fashion sentences, that discretion is limited by the sentencing statutes. Thus, courts do not have discretionary authority to sentence a defendant beyond the maximum allowable sentence prescribed by the Unified Code or to order concurrent sentences when the Unified Code requires consecutive sentences. *Arna*, 168 Ill. 2d at 113, 658 N.E.2d at 448. However, when a trial court enters an order of probation, it has wide discretion in fashioning probationary conditions. *People v. Meyer*, 176 Ill. 2d 372, 378, 680 N.E.2d 315, 318 (1997).

Section 5—6—3(a) of the Unified Code sets forth nine mandatory conditions of probation the trial court must impose in certain cases (730 ILCS 5/5—6—3(a) (West 2000)). Section 5—6—3(b) of the Unified Code sets forth another 16 conditions of probation the court may impose in its discretion. Significantly, in addition to all of these mandatory and discretionary probation conditions, section 5—6—3(b) of the Unified Code begins its list of discretionary conditions with the following language: "The [c]ourt may[,] *in addition to other reasonable conditions relating to the nature of the offense or the rehabilitation of the defendant* as determined for each defendant in the proper discretion of the [c]ourt, require that the [defendant do the following]." (Emphasis added.) 730 ILCS 5/5—6—3(b) (West 2000). By this language, the legislature is saying, "Look, judge, we've already provided you with two dozen possible probationary conditions, but if, in your judgment, you can think up some other reasonable probationary conditions, please feel free to use them."

A trial court might abuse its discretion by imposing an unreasonable condition of probation, but such an abuse of discretion is not equivalent to the court's exceeding its jurisdiction. We decline to hold that a trial court exceeds its jurisdiction when it imposes a condition that is arguably unreasonable or crafts an order that misapplies the

administerial provisions of the periodic imprisonment statute. See *Davis*, 156 Ill. 2d at 156, 619 N.E.2d at 754 ("a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law[,] or both"). If a defendant is truly aggrieved by any such alleged improprieties in the court's imposition of probationary conditions, then his remedy is to take a direct appeal. We simply hold that he may not sit silently only to attempt to raise the issue years later in an appeal, as here, from an order revoking his probation or periodic imprisonment.

In sum, we reject defendant's claim that *Arna* applies to this case. The trial court's imposition of allegedly improper probationary conditions, in violation of the court's discretionary authority, cannot be equated with a court's (1) disregard of a statutory mandate (as in *Arna*) or (2) imposition of a prison sentence that exceeded the maximum permitted under the Unified Code.

### III. DEFENDANT'S APPEAL IN CASE No. 98—CF—381

#### A. Background

At defendant's October 1999 jury trial, Danville police officer Steven Wilson testified that on June 19, 1998, he was on patrol in a squad car with Danville police officer John Miller. At around 2 p.m., he saw defendant standing in the rear doorway to a residence at 1613 East Fairchild, which is on public housing authority property. Wilson knew that defendant was barred from all housing authority property. He also (1) knew that Lynette Brandt was the resident of 1613 East Fairchild, and (2) was familiar with the layout of the residence. Wilson then saw defendant enter the residence. After Wilson parked the squad car, Miller went to the front entrance of the residence and Wilson proceeded to the back door. As he walked toward the back door, Brandt also approached that door. As they approached, Wilson noticed the back door being closed by someone inside the residence. Wilson told Brandt that he had seen defendant at the residence and needed to speak with him. Brandt told Wilson that Barbara Davis, defendant's sister, was inside, and Brandt knocked on the back door. Barbara opened the door, and Brandt and Wilson entered.

Wilson began looking for defendant on the first floor of the residence, and Brandt let Miller in through the front door. Wilson then went upstairs, where he found defendant standing in the hallway. A large amount of clothing was on the floor near defendant, and a box of clothing was next to where he was standing. Wilson placed defendant under arrest for being on the property, placed him in handcuffs, and searched him incident to arrest. He found a crack pipe in defendant's pants pocket. Miller came upstairs and took custody of

defendant. Wilson then conducted a "pat down" of the immediate area where defendant had been standing. In a box of clothing directly next to where defendant had been standing, Wilson found a small plastic Baggie containing what was later identified as crack cocaine. The Baggie had been on top of the clothing in the box. Wilson held the Baggie up and remarked, "[L]ook what I found." Barbara said, "[W]hat is it?," and defendant replied, "[I]t's just a [g]anke bag." Wilson asked defendant if he meant that it was not real. Defendant replied, "I've been ganked before and I was going to ganke someone." Wilson had heard the term "ganke" before and explained that it is often used to refer to something that is purported to be drugs but is not. Wilson acknowledged that he did not see defendant hide anything in the clothing or throw anything to the floor.

Miller's testimony regarding defendant's arrest was substantially similar to Wilson's. Miller had not seen the Baggie before Wilson lifted it out of the box. Miller further testified that he was with defendant at the public safety building when Wilson informed Miller that the substance in the Baggie had field-tested positive for cocaine. Miller then told defendant that he would be charged with possession of a controlled substance. Defendant responded, "[A]ll right. I knew it was real, but can't we work something out. Come on, man, give me a break. I got to work tomorrow."

Danville police officer Larry Thompson testified regarding the evidence storage procedures utilized in the case. Illinois State Police lab scientist Nancy Antonacci testified that the Baggie had contained 0.1 grams of cocaine base.

Janice Hoke testified on defendant's behalf that she used to "get high" with Brandt. Hoke testified regarding an occasion on which defendant was arrested at Brandt's residence; however, she was not certain that it was the June 19, 1998, incident because she had been led to believe that her recollection could have corresponded to one of two different dates.

Defendant testified that on the day of his arrest, he went to the East Fairchild residence to see Brandt, who was his girlfriend. He acknowledged that he was not allowed to be there. He initially stated that when he heard police walkie-talkies he went upstairs to the bathroom door. Hoke and Brandt were in the bathroom at that time. Later in his testimony, defendant indicated that he had been lying down in an upstairs bedroom when he heard the walkie-talkies. Hoke told Brandt not to open the door to the residence because there was a warrant for her arrest. Brandt went downstairs and answered the door. Defendant was standing in the hallway when the officers came upstairs and arrested him. After the officers arrested defendant, Brandt, and Hoke, defendant's sister arrived.

Defendant also testified that Hoke had handed him the crack pipe when she was in the bathroom, just before his arrest. Hoke left the bathroom and walked downstairs past the officers while defendant was being arrested. According to defendant, the box where Wilson found the Baggie was two to three feet from defendant. None of the clothes in the hallway belonged to him, and he had not seen the Baggie before Wilson removed it from the box. Defendant did not recall (1) saying anything about the Baggie being "ganke" or (2) admitting to Miller that he knew the substance in the Baggie was cocaine. He recalled telling Miller that he had to go to work the next day.

Wilson and Miller both testified on rebuttal that in early May 1998, they went to the East Fairchild residence on a different matter and arrested Brandt, Hoke, and defendant.

Over defendant's objection, the trial court admitted for impeachment purposes defendant's certified convictions for the following: (1) a 1990 aggravated battery conviction, (2) a 1994 unlawful use of a firearm by a felon conviction, and (3) a 1996 delivery of a controlled substance on public housing property conviction (case No. 96—CF—198).

Based on this evidence, the jury convicted defendant of possession of a controlled substance.

### B. Analysis

#### 1. *Prior-Conviction Evidence*

Defendant argues that the trial court abused its discretion by allowing the prosecutor to determine which of defendant's prior convictions to admit in evidence for impeachment purposes. We disagree.

■ Whether evidence of a prior conviction may be admitted in evidence for impeachment purposes is a question that lies within the trial court's discretion. *People v. Cooper*, 337 Ill. App. 3d 106, 116, 785 N.E.2d 86, 94 (2003). The admission of a prior conviction to impeach the credibility of a witness is governed by the test established in *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971). Under the *Montgomery* test, evidence of a prior conviction is admissible for impeachment if (1) the crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment; (2) less than 10 years have passed since the date of conviction of the prior crime or release of the witness from confinement, whichever is later; and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice. *People v. Atkinson*, 186 Ill. 2d 450, 456, 713 N.E.2d 532, 535 (1999).

At a hearing just prior to defendant's trial, the trial court and counsel revisited the question of the admissibility of defendant's prior

convictions for impeachment purposes. Defendant contends that the following colloquy shows that the court "delegated" to the prosecutor its authority to decide which of defendant's prior convictions would be admitted.

"THE COURT: *** I do have some question as I sit here and think about this as to whether or not it's overkill to put in two felony drug convictions. It seems to me that your point might be made quite clearly with the use of one of those convictions. I don't want to cut the State off at the knees, but, on the other hand, I do want to apply balance as much as I possibly can to recognize potential prejudice to this defendant through overkill and so I don't know that it really makes a whole lot of difference, Mr. Mills, but I do think that it might be fair under the circumstance to allow you to advise the [c]ourt which delivery conviction you would prefer to use knowing that I'm going to let one in and not the other.

MR. MILLS [(Assistant State's Attorney)]: Delivery of a [c]ontrolled [s]ubstance on [public] [h]ousing [p]roperty.

THE COURT: And that would be [case No. 96—CF—198].

MR. MILLS: That would be correct, [y]our [h]onor. That is also the more recent one which lends some support too.

THE COURT: All right. Then the ruling of the [c]ourt will be, in essence, to reverse myself as far as the June decision. I can only hope that at that point *Atkinson* hadn't come down yet, but if it did I was clearly incorrect in my decision, and if it hadn't then I'm somewhat vindicated, but today I am going to apply *Atkinson*'s findings and we will not be using the mere[-]fact approach.

We will allow the admission of the felony convictions for the aggravated battery, I think you said unlawful possession by a felon.

MR. MILLS: Yes, [y]our [h]onor.

THE COURT: And the delivery as to [case No. 96—CF—198]. [The other felony drug conviction] will not be admitted.

MR. MILLS: And the misdemeanor retail theft, right.

THE COURT: And the misdemeanor retail theft that I earlier ruled upon, that ruling will remain."

■ We disagree with defendant's interpretation of the above colloquy. The trial court did not delegate its authority to rule on the admissibility of defendant's prior convictions. Rather, the court informed the prosecutor that he would be limited to one conviction for possession of a controlled substance, asked the prosecutor which one he would like to admit, and then ruled that it would be admitted. The record does not show that the court ceased to exercise its discretion during the proceeding. Indeed, the record shows that the court gave considerable attention to the matter, having earlier ruled that the mere-fact method of impeachment could be used, but then later chang-

ing course in light of the supreme court's holding in *Atkinson*. See *Atkinson*, 186 Ill. 2d at 461, 713 N.E.2d at 537 (holding that trial courts should not consider the mere-fact impeachment method). If the court had deemed that the risk of unfair prejudice outweighed the probative value of the prior-conviction evidence, the court would have barred it. The record does not show that the court failed to exercise its discretion or delegated its authority.

We further note that similarity between the prior conviction and the offense charged does not mandate exclusion of the prior conviction. Instead, it is merely a factor to be considered. *Atkinson*, 186 Ill. 2d at 463, 713 N.E.2d at 538; *People v. Sykes*, 341 Ill. App. 3d 950, 976-77, 793 N.E.2d 816, 840 (2003). Here, as in *Atkinson*, (1) the jury was instructed to consider defendant's prior convictions only for the purpose of assessing his credibility and not as evidence of his guilt, and (2) defendant's credibility was a central issue in the case. See *Atkinson*, 186 Ill. 2d at 462-63, 713 N.E.2d at 538. The trial court did not abuse its discretion by finding that the probative value of admitting defendant's conviction for possession of a controlled substance on public housing property was not outweighed by the danger of unfair prejudice to defendant. See *Atkinson*, 186 Ill. 2d at 461-63, 713 N.E.2d at 537-38 (holding that the trial court did not abuse its discretion by allowing evidence of defendant's two prior burglary convictions at defendant's burglary trial).

## 2. *Cumulative Errors*

■ Defendant next argues that he was deprived of a fair trial "by cumulative error which adversely [a]ffected his credibility." Specifically, he contends that in addition to the evidence of his prior convictions, his credibility was unfairly undermined when the prosecutor made the following improper remarks during closing argument.

> "Let's look at something *** that's in the *** testimony, though. By the defendant's version—by the officer's version there is another person present. The defendant's sister Barbara Davis. She did not testify today. I would suggest you can consider from that whether or not she would support the defendant's version because she wouldn't. If she would he would have called her here. Why not here? Because the defendant's sister wouldn't dabble his story."

Defendant concedes that he neither raised a timely objection to the prosecutor's remarks nor raised this issue in a posttrial motion. Nonetheless, he contends that the remarks amount to plain error. Not only do we conclude there is no plain error, we conclude that the prosecutor's remarks did not constitute error at all. See *People v. Williams*, 193 Ill. 2d 1, 27, 737 N.E.2d 230, 245 (2000) ("Before invoking the plain error exception, however, 'it is appropriate to determine

whether error occurred at all.' *People v. Wade*, 131 Ill. 2d 370, 376[, 546 N.E.2d 553, 555] (1989)").

> "It is well established that prosecutors are afforded wide latitude in closing argument and may argue facts as well as reasonable inferences drawn from the evidence. [Citation.] In reviewing a challenge to remarks made by a prosecutor during closing argument, the comments must be considered in the context of the parties' closing arguments as a whole. Moreover, the reviewing court must indulge in every reasonable presumption that the trial court properly exercised its discretion in determining the propriety of the remarks." *People v. Beler*, 327 Ill. App. 3d 829, 835, 763 N.E.2d 925, 930 (2002).

It is generally improper for a prosecutor to comment on a defendant's failure to call a nonalibi witness when the witness was equally accessible to both parties. *People v. Zernel*, 259 Ill. App. 3d 949, 956, 636 N.E.2d 834, 839 (1994).

> "A witness is not considered equally accessible, however, if the witness, due to a familial relationship to the defendant, would likely be biased against the State. [Citation]. The State may then properly comment on the absence of the witness, especially where the witness could shed light on the accused's theory of defense." *Zernel*, 259 Ill. App. 3d at 956-57, 636 N.E.2d at 839.

Here, defense counsel argued that the cocaine could have belonged to someone else and indicated that "other people" besides defendant and Hoke were present at the time of defendant's arrest. On rebuttal, the prosecutor commented that Barbara, who was one of those "other people," did not testify on defendant's behalf. Barbara is defendant's sister and is not considered equally accessible to the State. Thus, the State was entitled to comment on her failure to testify on defendant's behalf. Accordingly, we conclude that the prosecutor's remarks did not constitute error.

## IV. SENTENCE CREDIT

■ Last, defendant argues that he is entitled to two additional days of credit against his prison sentence for time served prior to sentencing. The State concedes that defendant is entitled to credit for 201 days, and we accept the State's concession. Therefore, we remand with instructions to amend the sentencing order to reflect 201 days of credit for time served prior to sentencing.

## V. CONCLUSION

For the reasons stated, we affirm the trial court's judgment as

modified and remand with instructions to amend the sentencing order to reflect 201 days of credit for time served prior to sentencing.

Affirmed as modified and remanded with directions.

KNECHT and McCULLOUGH, JJ., concur.