THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NICHOLAS K. BRIDGEWATER, Defendant-Appellant.

Fourth District   No. 4—07—0850

Opinion filed March 3, 2009.

Michael J. Pelletier, Gary R. Peterson, and Karen Munoz, all of State Appellate Defender's Office, of Springfield, for appellant.

Matthew Goetten, State's Attorney, of Carrollton (Patrick Delfino, Robert J. Biderman, and Aimee Sipes Johnson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In July 2007, a jury convicted defendant, Nicholas K. Bridgewater, of (1) burglary (720 ILCS 5/19—1(a) (West 2006)) and (2) theft (720 ILCS 5/16—1(a)(1)(A) (West 2006)). The trial court later sentenced defendant to (1) an 8-year extended prison term on the burglary count and (2) a 354-day concurrent jail term on the theft count.

Defendant appeals, arguing that (1) he was denied a fair trial because the State failed to comply with certain discovery requirements; (2) the State failed to prove him guilty beyond a reasonable doubt; (3) he should be granted a new sentencing hearing because (a) he was unfit to be sentenced, (b) the court abused its discretion by imposing an extended-term sentence, and (c) the court failed to properly admonish him; and (4) his theft conviction must be vacated as a lesser-included offense of his burglary conviction. We disagree and affirm.

## I. BACKGROUND

In November 2006, the State charged defendant with (1) burglary (720 ILCS 5/19—1(a) (West 2006)) and (2) theft (720 ILCS 5/16—1(a)(1)(A) (West 2006)). Specifically, the State alleged that on November 29, 2006, defendant committed (1) burglary by entering

Scotty's convenience store with the intent to commit a theft and (2) theft by knowingly exerting unauthorized control over the convenience store's property with the intent to permanently deprive Scotty's owner of its use.

## A. Defendant's Pretrial Motion To Dismiss

Prior to the presentation of evidence at defendant's July 2007 trial, defense counsel moved to dismiss the State's case because the State failed to answer his January 2007 motion for discovery. In response to defense counsel's motion, the court initiated the following colloquy:

"THE COURT: [A]re you saying you have received no discovery whatsoever?

[DEFENSE COUNSEL]: I have received police reports *** but I have not received any response to my motion for discovery ***, which includes a number of things, including requests for the witnesses, the witnesses' criminal histories, any deals that had been reached with the witnesses in regard [sic] for the testimony, or the co[ ]defendant's criminal history. All those things that are needed for impeachment since this is essentially a credibility case.

THE COURT: State's Attorney, any response to that?

[PROSECUTOR]: Actually, yes ***. As you know, I did not file a formal discovery answer[,] which I rarely do with attorneys who are in town—having not tried a case with [defense counsel] before, I will apologize to him for not filing a formal answer. I would state, though, for the record—he has received, now that we're outside the presence of the jury, he received a police report, [and] statements of witnesses in [No.] 06—CF—107. In addition, a police report and copies of statements that are also somewhat relevant to this case, and the misdemeanor case involving the theft of $10.00[,] which I don't have in front of me. In complying with the continued duty of the State to provide defendant with discovery, I provided the defense with a statement from [the man defendant considers his grandfather] that was taken on—well, last month. If he wanted a formal discovery answer, he has ample time to do that. As for the criminal histories—he's right, I didn't provide that to him. If that's an issue to him—all—the only criminal history I'm aware of with any of the witnesses is here in Greene County. I don't have their criminal histories—madam Clerk has them. I don't think the answer to [defense counsel's] not asking me 'Hey, where are the criminal histories' is dismissal though.

* * *

[THE COURT]: All right, [defense counsel], here is what [the court] is going to do. [The court is] going to deny the motion [in limine] but *** going to direct the State to provide you with the

criminal history of all of the witnesses as might be the case—all of the State's witnesses—run a criminal history. Give those to the defense attorney and you may look those over, and if you need time to interview the witnesses or to consider that information—I'll give you whatever amount of time you request ***."

## B. The Evidence Presented at Defendant's Trial

Jonathan Campbell, a Scotty's clerk, testified that on November 29, 2006, defendant, with whom Campbell was familiar, and another young man (whom Campbell later came to know as Christopher Morris) came into Scotty's around 3 a.m. After entering the store, defendant came to the counter and asked to use the phone. While defendant used the phone, Morris walked down the liquor aisle.

Campbell explained that he had restocked the shelves in the liquor aisle approximately 10 minutes before defendant and Morris entered Scotty's. When defendant and Morris turned to leave, Campbell noticed that Morris was "holding his coat like there was something in it." After defendant and Morris left Scotty's, Campbell realized that a bottle of Jim Beam whiskey was missing. Because no one else had been in Scotty's since defendant and Morris came in, Campbell assumed they had stolen the bottle of whiskey and ran outside to "stop them." Once outside, Campbell saw defendant and Morris standing in front of "Cy Thompson's Garage," which was located not far from Scotty's. As Campbell approached defendant and Morris, they "took off running around the back side of Cy's." Campbell returned to Scotty's to call the police. Campbell immediately went back outside and saw defendant and Morris get into a car. Moments later, the police arrived and Campbell pointed the officer in the direction of the car's taillights as it disappeared around a corner.

Richard Portwood, the police officer who responded to Campbell's call, testified that he stopped the car that Campbell had identified and that the driver, Lewis Fleury, consented to a search of the car. Defendant and Morris—who were also in the car at the time of the stop—each consented to a search of their person. Portwood explained that although his searches did not reveal any contraband, the group agreed to follow him back to Scotty's. When they arrived at the store, Campbell identified defendant and Morris as the individuals (1) who had been in Scotty's and (2) whom he suspected had taken the bottle of Jim Beam. Defendant denied having any knowledge of the crime. Portwood thereafter released Fleury and defendant but detained Morris for a curfew violation.

After returning to the police station with Morris, Portwood called Morris's mother and obtained her permission to question Morris about the theft. Morris also agreed to answer Portwood's questions. Although

Morris had earlier denied any involvement, he later provided a written statement admitting that he and defendant had stolen the bottle of Jim Beam and had hidden it near Cy's garage. Portwood returned to the location where Morris said that he and defendant had left the bottle of Jim Beam but was unable to locate it.

Morris testified that while walking to Scotty's, defendant asked him whether he "wanted to help him steal a fifth." Morris agreed. Defendant told Morris to steal the whiskey while he distracted the clerk. When they entered Scotty's, defendant asked the clerk if he could use the phone. Meanwhile, Morris took the whiskey bottle off the shelf and concealed it under his shirt as he walked outside. After leaving Scotty's, Morris gave the bottle to defendant. Not much later, the clerk came outside and said, "Just give me the fifth back and there won't be no problems." At which time, defendant threw the bottle into the bushes near Cy's garage.

Fleury, whom defendant referred to as his grandfather, testified that he was related to defendant through marriage. Fleury explained that he received a call from defendant the morning of the robbery asking for a ride, and he later picked defendant up near Scotty's. Portwood stopped Fleury shortly thereafter. After being released, Fleury dropped defendant off near the home of defendant's girlfriend.

Evan Treadway testified that he knew defendant because his uncle had married defendant's mother. Treadway explained that his friend, Bobby Maxon, found a bottle of Jim Beam in a shed on Treadway's property. On December 7, 2006, Treadway spoke to defendant about a rumor he had heard about defendant having stolen vodka from a gas station. Defendant corrected him, responding "no, they said it was a bottle of whiskey." Defendant told Treadway that if he wanted a drink, all he had to do was go outside to the shed. Treadway added that he overheard defendant tell Maxon that he spent the night in Treadway's shed approximately three days after the robbery.

Defendant presented the testimony of his half-sister and stepfather. Essentially, these two witnesses testified that (1) defendant could not have been at Scotty's during the time of the robbery because he was with them and, in any event, (2) he did not smell like alcohol the night of the robbery.

The jury later convicted defendant of (1) burglary (720 ILCS 5/19—1(a) (West 2006)) and (2) theft (720 ILCS 5/16—1(a)(1)(A) (West 2006)).

## C. Defendant's Posttrial Motion for a Continuance

At defendant's September 2007 sentencing hearing, defense counsel requested a continuance due to defendant's mental and physical state. Defense counsel argued as follows:

"[Defendant] is not in any shape today to defend himself in this hearing. He's had an exhausting week as far as mentally and physical situations from getting his medications changed to getting the doses level changed to different types of medications; and he's had a situation here where he's been Tasered a couple of times; and then last night, he was locked up in a suicide chair for a number of hours; and is physically and mentally exhausted."

After hearing arguments and defendant's testimony regarding defendant's motion for continuance, the trial court found as follows:

"[T]he court has observed [defendant] here today and listened to his statement, and although apparently there have been some problems to use the term generously, *** the court feels that [defendant] knows why he is here, and can understand the nature of the proceedings ***. [The] motion is denied."

Following a sentencing hearing at which (1) defendant's mother and a local police officer testified, and (2) defendant made a statement in his own behalf, the trial court sentenced defendant as previously stated.

This appeal followed.

## II. ANALYSIS

Defendant argues that (1) he was denied a fair trial because the State failed to comply with certain discovery requirements; (2) the State failed to prove him guilty beyond a reasonable doubt; (3) he should be granted a new sentencing hearing because (a) he was unfit to be sentenced, (b) the court abused its discretion by imposing an extended-term sentence, and (c) the court failed to properly admonish him; and (4) his theft conviction must be vacated because it is lesser-included offense of his burglary conviction. We address defendant's contentions in turn.

### A. Defendant's Claim That He Was Denied a Fair Trial

Defendant contends that he was denied a fair trial because the State failed to comply with certain discovery requirements. Specifically, defendant asserts that because he was not provided information about Morris's two prior alcohol-related charges, he was denied "the full opportunity to present a defense and cross-examine *** Morris." We disagree.

"When a defendant argues that his due[-]process rights and right to a fair trial were violated by the State's failure to disclose certain evidence in discovery, we review the trial court's ruling on the matter for an abuse of discretion." *People v. Buckner*, 376 Ill. App. 3d 251, 257-58, 876 N.E.2d 87, 93 (2007).

Supreme Court Rule 412 (188 Ill. 2d R. 412) requires, in part,

that the State disclose, upon written motion by defense counsel, "any record of prior criminal convictions, *which may be used for impeachment*, of persons whom the State intends to call as witnesses at the \*\*\* trial." (Emphasis added.) 188 Ill. 2d R. 412(a)(vi).

■ The admissibility of prior convictions to impeach a witness's credibility is governed by the test established by our supreme court in *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971). Under the *Montgomery* test, evidence of a prior conviction is admissible to impeach a witness if "(1) the crime [(a)] was punishable by death or imprisonment in excess of one year, or [(b)] involved dishonesty or false statement regardless of the punishment; (2) less than 10 years have passed since the date of conviction of the prior crime or release of the witness from confinement, whichever is later; and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice." *People v. Davis*, 344 Ill. App. 3d 400, 409, 800 N.E.2d 539, 547-48 (2003).

■ In this case, the juvenile record at issue arose from the State's June 2005 petition to adjudicate Morris a delinquent minor. That June 2005 petition resulted from November 2003 and May 2005 citations for consumption of alcohol by a minor (235 ILCS 5/6—20 (West 2004)) (Greene County case Nos. 03—CM—295 and 05—CM—118). Following a September 2005 bench trial, the trial court (1) adjudicated Morris delinquent based on the May 2005 consumption charge and (2) sentenced him to six months' supervision, with alcohol- and drug-education treatment.

Because Morris's delinquency adjudication for consumption of alcohol by a minor (1) was not punishable by death or imprisonment in excess of one year and (2) did not involve dishonesty or false statement, we conclude that this juvenile adjudication was not admissible for impeachment purposes. Therefore, we further conclude that the trial court did not abuse its discretion by finding that the State did not violate Rule 412(a).

### B. Defendant's Claim That the State Failed To Prove Him Guilty Beyond a Reasonable Doubt

Defendant next contends that the State failed to prove him guilty beyond a reasonable doubt because (1) Morris changed his story multiple times and (2) the State's evidence merely showed that (a) "the" fifth of Jim Beam whiskey was never recovered, (b) "a" fifth of Jim Beam whiskey was recovered from Treadway's shed a week after the robbery, and (c) defendant stayed the night in Treadway's shed three days after the robbery. Essentially, defendant asserts that the State's evidence was insufficient to prove him guilty of burglary and theft beyond a reasonable doubt. We disagree.

"When a defendant challenges the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Woods*, 214 Ill. 2d 455, 470, 828 N.E.2d 247, 257 (2005). Because the jury is in the best position to evaluate the evidence presented, its findings are entitled to great weight. *People v. Wheeler*, 226 Ill. 2d 92, 114-15, 871 N.E.2d 728, 740 (2007).

The State charged defendant with burglary in violation of section 19—1(a) of the Criminal Code of 1961 (720 ILCS 5/19—1(a) (West 2006)). Section 19—1(a) of the Code provides as follows: "A person commits burglary when without authority he knowingly enters or without authority remains within a building ***, or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19—1(a) (West 2006). The burglary charge in this case is atypical, however, in that it does not involve locked doors or entry by stealth. This type of burglary is commonly known in central Illinois as a "Jones burglary." This type of burglary potentially can raise serious questions about (1) the accused burglar's intent to steal at the time he entered the store and (2) his lack of authority to enter. *People v. Hopkins*, 229 Ill. App. 3d 665, 671, 593 N.E.2d 1028, 1032 (1992). Nevertheless, the State can prove the accused burglar's intent by inferences drawn from his conduct and the circumstances of the case. *Hopkins*, 229 Ill. App. 3d at 672, 593 N.E.2d at 1032.

The State also charged defendant with theft in violation of section 16—1(a)(1)(A) of the Code (720 ILCS 5/16—1(a)(1)(A) (West 2006)). Under section 16—1(a)(1)(A) of the Code, a person commits theft when he (1) knowingly obtains or exerts control over property of the owner and (2) intends to deprive the owner permanently of the use or benefit thereof. 720 ILCS 5/16—1(a)(1)(A) (West 2006).

■ In this case, the State presented evidence, through the testimony of Morris (defendant's accomplice) that (1) defendant wanted Morris to help him steal "a fifth" from Scotty's; (2) defendant told Morris to steal the whiskey while he distracted the clerk; (3) Morris and defendant followed through with defendant's scheme; and (4) once Morris and defendant were outside, Morris turned the stolen bottle of Jim Beam over to defendant. In addition, Campbell corroborated Morris's testimony by explaining to the jury that (1) he was familiar with defendant and that defendant and another young man (whom Campbell later came to know as Morris) came into Scotty's around 3 a.m.; (2) after entering the store, defendant asked to use the phone; (3) when defendant and Morris turned to leave, Campbell noticed that Morris was "holding his coat like there was something in

it"; and (4) after defendant and Morris left, Campbell realized that a bottle of Jim Beam was missing from the shelf.

Accordingly, we conclude that the State presented sufficient evidence such that the jury could have found beyond a reasonable doubt that defendant committed burglary and theft. We note defendant contends that (1) Morris gave different accounts of the burglary and theft on two separate occasions and (2) the bottle of Jim Beam recovered from Treadway's shed was not linked directly to defendant through forensic evidence. We find this contention is not compelling in this case because defendant presented this information at trial and the jury rejected it.

## C. Defendant's Claims of Error at Sentencing

Defendant next contends that he should be granted a new sentencing hearing because (1) he was unfit to be sentenced and (2) the trial court abused its discretion by sentencing him to an eight-year, extended-term prison sentence for burglary. Alternatively, defendant asserts that this court should remand for proper admonishments. We disagree.

### 1. *Defendant's Fitness*

"A defendant is presumed to be fit to *** be sentenced." *People v. Williams*, 364 Ill. App. 3d 1017, 1023, 848 N.E.2d 254, 259 (2006); 725 ILCS 5/104—10 (West 2006). "A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104—10 (West 2006). A trial court may use its discretion to determine whether a *bona fide* doubt exists as to a defendant's fitness. *People v. Hanson*, 212 Ill. 2d 212, 222, 817 N.E.2d 472, 477 (2004). Some of the factors relevant to whether a *bona fide* doubt exists as to a defendant's fitness are "(1) the rationality of the defendant's behavior and demeanor at trial; (2) counsel's statements concerning the defendant's competence; and (3) any prior medical opinions on the issue of the defendant's fitness." *Hanson*, 212 Ill. 2d at 223, 817 N.E.2d at 478.

At defendant's September 2007 sentencing hearing in this case, defense counsel requested a continuance due to defendant's mental and physical state. Defense counsel argued that defendant was not in any shape to participate in the sentencing hearing because (1) he had experienced an exhausting week, (2) was locked up in a suicide chair for a number of hours, and (3) was physically and mentally exhausted.

The trial court thereafter questioned defendant to determine whether a *bona fide* doubt existed as to his fitness. Defendant testified, in part, as follows:

"[L]ast night *** I knew I wouldn't be able to talk to a counselor, I ask[ed] for five or six hours to be able to talk to them, because I know this is a very important day to me; and they wouldn't let me, so therefore I took it in[to] my own hands to try to get something done; so I decided to start slicing my wrist and I even actually, more or less, tried to hang myself with my socks. And through that point, I didn't get no sleep [sic] at all last night 'cause they kept me in there without any blanket or a bed or anything else; and I'm just—my brain right now is really scattered. I mean, I'd just like to have a couple of days to finish *** writing my *** history of my paper [sic] for you before you sentence me. Just a couple of days?"

Following defendant's testimony and arguments from counsel, the trial court found that defendant (1) knew that he was in court to be sentenced and (2) could understand the nature of the proceedings. In other words, the court found that no *bona fide* doubt was present as to defendant's fitness.

■ Given defendant's statements, we conclude that the trial court's finding that no *bona fide* doubt was present as to defendant's fitness was not against the manifest weight of the evidence. While defendant may have been tired, the fact that he wanted additional time to prepare his written statement for sentencing alone demonstrates that he (1) knew why he was there and (2) understood the nature of the proceedings. Indeed, the court's finding was reinforced when, at the same hearing, defendant read from a lengthy written statement and spoke in depth about his family history, drug use, and the remorse he felt.

### 2. Defendant's Extended-Term Sentence

"A trial court is given great deference when making sentencing decisions, and if a sentence falls within the statutory guidelines, it will not be disturbed on review unless the court abused its discretion and the sentence is manifestly disproportionate to the nature of the case." *People v. Grace*, 365 Ill. App. 3d 508, 512, 849 N.E.2d 1090, 1093-94 (2006).

■ In this case, defendant concedes that (1) he was eligible for an extended-term sentence and (2) his eight-year sentence falls within the statutory guidelines. Thus, we are left to determine whether the (1) trial court abused its discretion and (2) imposition of his eight-year sentence was manifestly disproportionate to the nature of the case.

In sentencing defendant, the trial court stated the following:

"[The court has] taken [defendant's] statement into consideration. In fact, [the court has] considered the [p]resentence [r]eport, and there have been certain amendments and corrections to the [p]resentence [r]eport, and the court considers it as amended or

corrected; and [the court has] listened to [defendant's] statement, [the court has] listened to the evidence in mitigation here. Listened to the comments of [defendant's] attorney and the State's [A]ttorney. [The court has] considered the financial impact of incarceration. [The court has] considered [defendant's] rehabilitative potential and the seriousness of the offense and the objective of restoring [defendant] to useful citizenship. Obviously, [the court has] considered [defendant's] statement. [The court has] considered all those statutory factors that [defense counsel] went over in mitigation.

This case is not [defendant's] first felony conviction. [Defendant's] record indicates that in 2002, [he was] guilty of a felony burglary, a Class 2 felony, and *** sentenced to three years ***; and that ran concurrent with a Morgan County case. In [2003], [defendant was] sentenced to two years ***. In [2004], [defendant] had an offense, at least one. In [2005], [defendant] had an offense. In [2006], [defendant] obviously had offenses. As the State's Attorney said, every year since [defendant] became 18, [defendant has had] something. And *** [defendant] blame[s] it all on alcohol and drugs. ***

[The court has] listened to everything and [it] think[s] [defendant has] been given plenty of chances to try to straighten out, but [he has not] done it."

The court thereafter sentenced defendant to eight years in prison.

Given defendant's lengthy criminal record, and the fact that defendant was eligible for an extended term of "not less than 7 years and not more than 14 years" (730 ILCS 5/5—8—2(a)(4) (West 2006)), we conclude that (1) the court did not abuse its discretion and (2) defendant's eight-year sentence was not manifestly disproportionate to the nature of the offense.

### 3. The Trial Court's Admonishments

Supreme Court Rule 605(a) (210 Ill. 2d R. 605(a)) requires a trial court to admonish a defendant (1) as to how and when to file an appeal and (2) that failure to file a timely motion to reconsider sentence will result in forfeiture. People v. Stewart, 365 Ill. App. 3d 744, 751, 851 N.E.2d 162, 169 (2006). However, similar to the situation in which a defendant's conduct is so disruptive that the court cannot properly proceed and he loses his right to be present at his own criminal trial (see Illinois v. Allen, 397 U.S. 337, 343, 25 L. Ed. 2d 353, 359, 90 S. Ct. 1057, 1060-61 (1970) (holding that a defendant can lose his right to be present at trial if, as a result of his own disruptive, disrespectful, and disorderly behavior the trial cannot be carried on)), when incomplete admonishments are the result of a defendant's own disruptive,

disrespectful, and disorderly conduct, a defendant forfeits any right to challenge such incomplete admonishments as unconstitutional.

In this case, while the trial court was trying to calculate defendant's credit for time served, defendant interrupted three times, interjecting as follows:

"[DEFENDANT]: Your Honor, it's a fifth of whiskey.

[PROSECUTOR]: Your Honor, [the State has] 118 days served since May 16th of this year.

THE COURT: Credit for 118 days served. Judgment entered—

[DEFENDANT]: You know what? This is my execution. You realize that?

THE COURT: Judgment entered for costs in regard to [c]ount II, charge theft under $300—

[DEFENDANT]: Eight [f]ucking [y]ears."

The court thereafter began to admonish defendant pursuant to Rule 605(a), at which time the court and the parties exchanged the following dialogue:

"THE COURT: ***

Now, [defendant], listen up here. You have a right to appeal. You have a right to request the clerk of the court to prepare and file a notice of appeal. You have a right, if indigent, to be furnished without cost to you a transcript of the proceedings at your trial and at this hearing today, and any other hearings in which there was a record. You have a right to have counsel appointed on appeal. Your right to appeal will be preserved only if a notice of appeal is filed in the trial court within 30 days from the date of the sentence.

[DEFENDANT]: Can I say one thing, your Honor?

THE COURT: What?

[DEFENDANT]: I hope the State's Attorney is happy, I always was told—

THE COURT: All right. That's enough.

[DEFENDANT]: That you should—you know; you've got to pay for your own attorney, otherwise you get screwed. (Sheriff gets defendant to take him to jail[.]) See you in four years (to State's Attorney)."

■ Given defendant's conduct, we conclude that defendant forfeited any challenge to the trial court's admonishments because the incomplete admonishments were the result of his own outbursts, disrespect, and disregard for the court's authority. To allow defendant to challenge the court's admonishments on such a ground would be to give this defendant and future defendants the ability to indefinitely delay their sentencing. We refuse to endorse such a course.

## D. Defendant's Claim That His Theft Conviction Should Be Vacated as a Lesser-Included Offense of His Burglary Conviction

■ Defendant also contends that his theft conviction should be

vacated as a lesser-included offense of his burglary conviction. He acknowledges that he failed to raise the issue in his posttrial motion and that he has raised the issue for the first time on appeal. Nevertheless, defendant asserts, citing two Second District cases (*People v. Thomas*, 374 Ill. App. 3d 319, 872 N.E.2d 438 (2007) (concluding that theft is a lesser-included offense of burglary based on the charging instrument), and *People v. Bussan*, 306 Ill. App. 3d 836, 715 N.E.2d 820 (1999) (theft charge was lesser-included offense of burglary)), that this one-act, one-crime violation should be deemed plain error. We disagree and conclude that no error was committed at all.

Because it is a question of law, we review whether the one-act, one-crime doctrine prohibits a theft conviction when a defendant has also been convicted of burglary *de novo*. *People v. Johnson*, 368 Ill. App. 3d 1146, 1163, 859 N.E.2d 290, 305 (2006).

Section 19—1(a) of the Code states as follows: "A person commits burglary when without authority he knowingly enters or without authority remains within a building *** with intent to commit therein a felony or theft." 720 ILCS 5/19—1(a) (West 2006). Under the Code, a person commits theft when he knowingly "[o]btains or exerts unauthorized control over property of the owner *** and *** [i]ntends to deprive the owner permanently of the use or benefit of the property." 720 ILCS 5/16—1(a)(1)(A) (West 2006).

The one-act, one-crime doctrine prohibits multiple convictions when (1) the convictions result from precisely the same physical act or (2) one of the offenses is a lesser-included of the other. *People v. Lindsey*, 324 Ill. App. 3d 193, 200, 753 N.E.2d 1270, 1277 (2001). Thus, a reviewing court must first determine whether the defendant's conduct was a single physical act. *People v. Harvey*, 211 Ill. 2d 368, 389, 813 N.E.2d 181, 194 (2004). " 'Multiple convictions are improper if they are based on precisely the same physical act.' " *Johnson*, 368 Ill. App. 3d at 1163, 859 N.E.2d at 305, quoting *People v. Rodriguez*, 169 Ill. 2d 183, 186, 661 N.E.2d 305, 306 (1996). For this purpose, an "act" is " 'any overt or outward manifestation which will support a different offense.' " *Rodriguez*, 169 Ill. 2d at 188, 661 N.E.2d at 307, quoting *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845 (1977). "If the court determines that the defendant's convictions are based on multiple acts, the court will determine whether any of the offenses are lesser-included offenses." *Johnson*, 368 Ill. App. 3d at 1163, 859 N.E.2d at 305. A lesser-included offense is one that establishes "proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2—9(a) (West 2006). *Johnson* held that if the court determines that any of the offenses are lesser-included of-

fenses, then multiple convictions are improper. *Johnson*, 368 Ill. App. 3d at 1163, 859 N.E.2d at 305. However, if the court determines that none of the offenses are lesser-included offenses, then multiple convictions may stand. *Johnson*, 368 Ill. App. 3d at 1163, 859 N.E.2d at 305.

Recently, when presented the same issue in *People v. Poe*, 385 Ill. App. 3d 763, 896 N.E.2d 453 (2008), the Third District held that the one-act, one-crime principle did not apply to convictions for burglary and theft, explaining its rationale as follows:

" 'Theft is not an included offense of burglary, and each has elements not included in the others so that multiple convictions of theft and burglary are not contrary to the [one-act, one-crime] doctrine of *King*[, 66 Ill. 2d 551, 363 N.E.2d 838].' *People v. McCreary*, 123 Ill. App. 3d 880, 884, 463 N.E.2d 455, 458-59 (1984). '[I]t is well recognized that theft is not an included offense of burglary by definition. Burglary does not require a taking and theft does not require an entry.' *People v. Johnson*, 103 Ill. App. 3d 564, 567, 431 N.E.2d 1381, 1383 (1982). 'Multiple convictions and concurrent sentences should be permitted \*\*\* where a defendant has committed several acts, despite the inter-relationship of those acts.' [*King*, 66 Ill. 2d at 566, 363 N.E.2d at 844]." *Poe*, 385 Ill. App. 3d at 766, 896 N.E.2d at 455-56.

Burglary is accomplished at the moment a defendant makes an unauthorized entry with the intent to commit a theft (or felony) regardless of whether that theft (or a felony) is ever committed. *Poe*, 385 Ill. App. 3d at 766, 896 N.E.2d at 456. "It is the entry coupled with the intent to commit the theft or felony that completes the burglary." *Poe*, 385 Ill. App. 3d at 766, 896 N.E.2d at 456. Indeed, a defendant may be convicted of burglary when no theft has been committed. See *People v. Roberts*, 189 Ill. App. 3d 66, 71-72, 544 N.E.2d 1340, 1344 (1989) (affirming the defendant's conviction for burglary where evidence showed that the defendant entered building containing personal property of value which could have been stolen).

Defendant cites *People v. Kolton*, 219 Ill. 2d 353, 848 N.E.2d 950 (2006), to demonstrate that theft is considered a lesser-included offense of burglary even though theft and burglary contain different elements because certain elements may be inferred under the "charging-instrument approach." *Kolton* is distinguishable, however, because it dealt with whether a particular crime was a lesser-included offense for purposes of jury instructions, not whether that crime was a lesser-included offense under one-act, one-crime principles.

"[T]hat theft could be a lesser-included offense of burglary for purposes of jury instructions is clearly based on a concern that one might be convicted of burglary if that was the only option available to

jurors ***." *Poe*, 385 Ill. App. 3d at 770, 896 N.E.2d at 459. Such a rationale does not support the contention that separately charged convictions for burglary and theft violate one-act, one-crime principles.

Accordingly, we agree with the Third District's decision in *Poe* that theft is not a lesser-included offense of burglary for purposes of the one-act, one-crime doctrine. To the extent that this decision is inconsistent with the Second District's holdings in *Thomas* and *Bussan*, we disagree with the Second District's holdings in those cases.

Because we conclude that no error occurred, we need not consider defendant's appeal under a plain-error analysis.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.