# Illinois Official Reports

## Appellate Court

---

### *People v. Roman*, 2016 IL App (1st) 141740

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL ROMAN, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-1740 |
| Filed<br>Rehearing denied | November 22, 2016<br>December 16, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-3180; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Pamela Rubeo, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Peter Fischer, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Pierce and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1      After his conviction for first degree murder and robbery was affirmed, Roman filed a *pro se* postconviction petition. He alleged that the State violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose evidence showing the State allegedly assisted two witnesses obtain citizenship and disability benefits in exchange for their testimony. The trial court dismissed the petition finding no *Brady v*iolation. We determine Roman failed to present the gist of a constitutional claim as he has not shown that the State suppressed evidence material to the finding of his guilt or to the punishment imposed on him.

¶ 2                                       BACKGROUND

¶ 3      The underlying facts are recounted in the opinion disposing of Roman's appeal from conviction. *People v. Roman*, 2013 IL App (1st) 102853. Here, we state only those facts necessary to address the issues raised in this appeal.

¶ 4      Roman, his brother Martin, Adolfo Zuniga, and Carlos Lopez, along with Roman's cousins Ismael and Omar Morales, were charged with murder and robbery. The victim, a forklift operator at a tortilla factory, was fatally beaten. Roman elected a bench trial and was tried simultaneously with codefendant Ismael Morales, whose case was heard by a jury. Luis Fernando Garcia and his girlfriend, Sylvia Ortiz, who lived in an apartment near the tortilla factory, witnessed the incident from their apartment window. Initially reluctant to talk to the police, Garcia and Ortiz went to the police station a few days later, explained what they saw, and identified Roman and his codefendants in photo arrays and in a lineup. At trial, Garcia and Ortiz testified that they saw the men pull the victim off the forklift and kick and punch him, take his wallet, and drop a concrete rock on his head. The State presented several other witnesses, including the responding police officers, detectives who investigated the murder, a forensic scientist, and the medical examiner.

¶ 5      The trial court found Roman guilty of first degree murder and robbery and sentenced him to 35 years and 7 years respectively, to be served concurrently. After this court affirmed on direct review, Roman filed a *pro se* postconviction petition alleging, in part, that the State violated his due process rights by committing a *Brady* violation. Specifically, Roman alleged that the State failed to disclose a promise to help Garcia with immigration and disability benefits issues in exchange for his and Ortiz's cooperation. Roman attached to the petition a letter from Assistant State's Attorney (ASA) Andrew Varga to the Immigration and Naturalization Service (INS) dated July 10, 2010. In the letter, ASA Varga wrote, "I am writing to you in connection with Mr. Garcia's citizenship application." ASA Varga explained that he became acquainted with Garcia during the prosecution of five men for first degree murder because Garcia was an eyewitness to the murder. Varga wrote:

> "Mr. Garcia's cooperation with the Chicago Police Department and Cook County State's Attorney's Office personnel investigating the case was instrumental in the arrest and eventual charging of the offenders. Subsequently, Mr. Garcia has testified in the jury trials of the juvenile offender, two of the adult offenders and in a bench trial of a third adult offender. All four were convicted of First Degree Murder. It is anticipated that Mr. Garcia will be called to testify at the trial of the remaining two

adult offenders. It is our expectation that those offenders will go to trial by early 2011."

¶ 6    In response to an impound order filed by Roman's appellate attorney, the letter was impounded on April 27, 2011, and was part of the record on appeal from the conviction.

¶ 7    Roman also attached a document entitled "supplemental answer to discovery" that the State filed in the cases of codefendants Martin Roman and Adolfo Zuniga. In that document, the State disclosed that on January 31, 2011, the day before the codefendants' trial began, Garcia left a voicemail message for Patricia Gonzalez, a Cook County Assistant State's Attorney, stating, "[i]f you don't help me with immigration or disability I'm going to deny everything and I'm going to say that you forced me to say everything I've already said ***." The transcript of the call, which was made after Roman's conviction and before the appeal from his conviction, was not a part of the record on direct review.

¶ 8    Roman argued that the State violated his due process rights and committed a *Brady* violation by failing to disclose the transcript of Garcia's voicemail, which he contended was evidence the State promised to help Garcia and Ortiz with their immigration and disability issues in exchange for their testimony and that the State knew Garcia's testimony was perjured. Roman argued that if the State had disclosed this document, there is a reasonable probability that the trial court would have viewed Garcia's and Ortiz's testimony with more scrutiny. Roman also argued that his trial counsel was ineffective for failing to uncover evidence of a deal and that his appellate counsel was ineffective for failing to raise the *Brady* violation on direct review.

¶ 9    On April 16, 2014, the trial court dismissed Roman's petition, finding that his assertion of a *Brady* violation to be a mischaracterization, stating, "His complaint is that his lawyer and appellate lawyer didn't properly point out that the witness on the case, the Government's primary witness, had called the State's Attorney's office demanding some help with immigration issues he had. That happened after this man's trial. We were proceeding on another trial with a codefendant. The lawyer had ample opportunity to aggressively cross-examine the witness." The court concluded, "I don't find that this *pro se* petition has merit at all in any of its claims. It is accordingly denied." Roman appeals, addressing only the trial court's *Brady* finding and not the merits of his ineffective assistance of counsel claims.

¶ 10                                    ANALYSIS

¶ 11    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a process by which a convicted defendant may assert a substantial denial of his or her constitutional rights in the proceedings that led to the conviction. *People v. Harris*, 224 Ill. 2d 115, 124 (2007). A proceeding under the Act does not constitute a continuation or substitute for an appeal of the conviction. Rather, it serves as a collateral proceeding that is limited to claims that were not, but could have been, previously litigated. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). "Consequently, any issues that were decided on direct appeal are *res judicata*, and any issues that could have been presented on direct appeal, but were not, are forfeited." *People v. Reyes*, 369 Ill. App. 3d 1, 12 (2006). We review the summary dismissal of a postconviction petition *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 389 (1998).

¶ 12    A postconviction proceeding has three distinct stages. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). At the first stage of a postconviction proceeding, we focus on whether the petition sets forth a "gist" of a constitutional claim. *Id.* at 99-100. If the court determines that the

defendant satisfied the minimum pleading threshold, then the petition moves on to second-stage proceedings. 725 ILCS 5/122-2.1(b) (West 2014). At the second stage, an indigent defendant has a right to counsel, and the State may file an answer or a motion to dismiss the defendant's petition for postconviction relief. *Id.*; *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). During this stage, the trial court reviews the petition and accompanying documents to determine whether the defendant made a "substantial showing" that a constitutional violation occurred. *Edwards*, 197 Ill. 2d at 246. If the defendant fails to make the requisite showing, the petition will be dismissed; otherwise, it proceeds to the third stage, an evidentiary hearing. 725 ILCS 5/122-6 (West 2014); *People v. Childress*, 191 Ill. 2d 168, 174 (2000).

¶ 13    As indicated, the first stage requires a postconviction petition, among other things, to "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2014); *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009) (defendant must state "gist" of a constitutional claim). A defendant need only present a limited amount of detail in the petition. *People v. Delton*, 227 Ill. 2d 247, 254 (2008); *People v. Torres*, 228 Ill. 2d 382, 394 (2008). Because at this stage the defendant drafts most petitions with little legal knowledge or training, we impose a low threshold for survival. *Delton*, 227 Ill. 2d at 254; *Torres*, 228 Ill. 2d at 394. The petition need not contain legal argument or citation to legal authority. *Hodges*, 234 Ill. 2d at 9. Nevertheless, broad conclusory allegations are never enough even under the low threshold of the first stage. *Delton*, 227 Ill. 2d at 258.

¶ 14    The allegations in a postconviction petition have to be supported by affidavits, records, or other evidence to demonstrate that the petition's allegations are capable of " 'objective or independent corroboration.' " *Id.* at 254 (quoting *People v. Hall*, 217 Ill. 2d 324, 333 (2006), citing *People v. Collins*, 202 Ill. 2d 59, 67 (2002)); 725 ILCS 5/122-2 (West 2014). The petition may be summarily dismissed as frivolous or patently without merit only if it has no arguable basis in either law or in fact. *People v. Tate*, 2012 IL 112214, ¶ 9.

¶ 15    The State insists that Roman's postconviction claims could have been raised on direct review, and thus are forfeited. Specifically, the State notes that the original appellate record contains the letter from ASA Varga to the INS, rebutting Roman's claim that he was unaware of the letter's existence and could not challenge the issue on direct review. Furthermore, the State contends the letter does not show that the State's Attorney's Office helped Garcia and Ortiz with the citizenship process or that assistance in that process was predicated on their testifying on the State's behalf. Roman argues that the letter, considered in conjunction with the transcript of Garcia's voicemail message, is evidence that Garcia and Ortiz testified falsely in exchange for the State's help on immigration and disability matters.

¶ 16    Although the State immediately disclosed the voicemail transcript in the codefendants' case, it is absent from the record in Roman's case. Thus, at the time of his direct review, based on the INS letter alone, appellate counsel did not have a valid argument that there was evidence showing the State agreed to assist Garcia and Ortiz in exchange for their cooperation. Accordingly, the issue is not waived on *res judicata* grounds, and we must determine whether the State committed a *Brady* violation as to either document.

¶ 17    Under *Brady*, the State violates a defendant's right to due process by failing to disclose evidence that is favorable to the accused and material to either guilt or punishment. *People v. Beaman*, 229 Ill. 2d 56, 73 (2008). A *Brady* claim requires a defendant demonstrate (i) the undisclosed evidence favors the accused as exculpatory or for impeachment purposes; (ii) the

State willfully or inadvertently suppressed the evidence; and (iii) the accused was prejudiced because the evidence was material to guilt or punishment. *Id.* at 73-74; see also *People v. Ellis*, 315 Ill. App. 3d 1108, 1117 (2000) (sentencing witness's cooperation constitutes benefit which State must disclose).

¶ 18    Evidence is material where a reasonable probability exists that disclosure of the evidence would have resulted in a different outcome. *Smith v. Cain*, 565 U.S. ___, 132 S. Ct. 627 (2012); see also *Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."). A reasonable probability does not require it to be more likely than not that the defendant would have received a different verdict with the additional evidence, but rather, the likelihood of a different result must be great enough to undermine confidence in the verdict. *Id.* This is not a sufficiency of the evidence test. *People v. Coleman*, 183 Ill. 2d 366, 393 (1998). Nonetheless, impeachment evidence may not be material where the State's remaining evidence is strong enough to preserve confidence in the verdict. *Smith*, 565 U.S. ___, 132 S. Ct. 627. Also, the cumulative effect of the suppressed evidence informs the materiality determination. *Coleman*, 183 Ill. 2d at 393.

¶ 19    The State denies that it promised to assist Garcia with immigration and disability benefits issues in exchange for his testimony. The State concedes, however, that if it had done so, that information could have been the subject of impeachment on cross-examination, satisfying the first *Brady* requirement. Thus, we turn to whether, as the State argues, Roman falls short of establishing the other two remaining *Brady* requirements.

¶ 20    Roman contends the State willfully suppressed evidence of a *quid pro quo* agreement with Garcia by not disclosing the INS letter until after his trial and not disclosing to him Garcia's voicemail transcript. We need not determine whether the State actually delayed disclosure of the letter or suppressed the transcript of the voicemail message willfully or inadvertently, in violation of *Brady*, because Roman's petition fails to make a sufficient showing that there is a reasonable probability either document would have affected the outcome of his trial.

¶ 21    As to the letter, as already noted, it was dated July 10, 2010, after Roman was convicted and before he was sentenced. It was part of the record on appeal and thus, should have been raised on direct review, but was not. Roman contends the State should have turned the letter over sooner so the issue could have been raised in his motion for a new trial. But based on the substance of the letter, Roman cannot show that he was prejudiced by the State's failure to turn over the document until after the trial court ruled on his motion for a new trial. In the letter, ASA Varga merely states that he is acquainted with Garcia, who was a witness in multiple prosecutions. The letter neither indicates nor suggests the State assisted Garcia and Ortiz in their immigration matter or that the State provided the letter in exchange for or in recognition of their testimony in his case. Thus, the letter's earlier disclosure would not have had an effect on the outcome of Garcia's trial or his motion for a new trial.

¶ 22    Similarly, the transcribed voicemail message that Garcia left for an assistant State's Attorney almost five months after Roman's sentencing hearing is not material to Roman's guilt or innocence. It does not show that the State agreed to help Garcia in exchange for or in recognition of his testimony or that any assistance was predicated on Garcia's and Ortiz's testimony. According to the transcription, Garcia threatened that if the State's assistance was

not forthcoming he was going to "deny everything" and would testify in the codefendants' cases that the State forced him to say what he already said. The message, though, neither refers nor alludes to Garcia's and Ortiz's testimony offered in Roman's case. And the timing of the message—the day before the codefendants' trial began—indicates that Garcia was only referring to his testimony in that case and not Roman's case, which as noted, concluded months earlier. Moreover, the message does not lend support to Roman's contention that they were lying when they testified in his case; to the contrary, the message conveys that they told the truth in Roman's case and were making threats regarding their upcoming testimony in the codefendants' cases. Regardless, the message is probative of nothing material to Roman's guilt or innocence.

## CONCLUSION

Because the contents of the INS letter and the voicemail transcript were not material to Roman's guilt or his punishment, Roman's postconviction petition fails to make a gist of a constitutional claim of a *Brady* violation regarding either document. Therefore, we affirm the trial court's dismissal of the postconviction petition.

Affirmed.