NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180033-U

NO. 4-18-0033

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 31, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JAMES ANTONIO JOHNSON, | ) | No. 12CF1074 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rebecca S. Foley, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding defendant (1) failed to make a substantial showing that either appellate or trial counsel were ineffective and (2) received reasonable assistance from postconviction counsel.

¶ 2    In June 2013, a jury convicted defendant, James Antonio Johnson, of (1) delivery of a controlled substance (less than one gram of a substance containing cocaine) (count I) and (2) two counts of delivery of a controlled substance (less than one gram of a substance containing heroin) (counts II and III). 720 ILCS 570/401(d)(i) (West 2010). At a July 2013 sentencing hearing, the trial court—noting that defendant's criminal history mandated a Class X sentence under section 5-4.5-95(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-95(b) (West 2012))—sentenced defendant to 18 years on each count, to be served concurrently.

¶ 3        Defendant appealed, arguing that his 18-year sentence was excessive. *People v. Johnson*, 2015 IL App (4th) 130755-U, ¶ 3. This court affirmed, concluding defendant's sentencing claim was forfeited and did not warrant plain-error review. *Id.* ¶ 1.

¶ 4        In March 2016, defendant *pro se* filed a petition for relief under the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 to 122-7 (West 2014)), arguing, among other things, that his appellate counsel was ineffective for failing to properly present his excessive sentence claim and the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In June 2016, the trial court advanced defendant's petition to the second stage of proceedings and appointed counsel for defendant.

¶ 5        In January 2017, defendant's postconviction counsel filed a motion to withdraw as counsel and for a finding of no merit. Following an April 2017 hearing, the trial court allowed counsel to withdraw, and defendant elected to proceed *pro se*. In July 2017, the State filed a motion to dismiss defendant's petition. Defendant filed a response to the State's motion in which he raised several new claims, including that his trial counsel was ineffective for failing to call Shelby Winterland as a witness at trial. Following a hearing, the trial court granted the State's motion to dismiss.

¶ 6        Defendant appeals, arguing the trial court erred by dismissing his petition at the second stage of proceedings because he (1) made a substantial showing of ineffective assistance of appellate counsel, (2) provided adequate documentation to support his ineffective assistance of trial counsel claim, and (3) was denied reasonable assistance of postconviction counsel. We disagree and affirm.

¶ 7                                    I. BACKGROUND

¶ 8        In October 2012, the State charged defendant with one count of unlawful delivery of a controlled substance (less than one gram of a substance containing heroin) (720 ILCS 570/401(d)(i) (West 2010)) (count II), one count of unlawful delivery of a controlled substance (more than 1 gram but less than 15 grams of a substance containing heroin) (*id.* § 401(c)(2)) (count III), and two counts of unlawful delivery of a controlled substance (less than one gram of a substance containing cocaine) (*id.* § 401(d)(i)) (counts I and IV).

¶ 9                          A. Defendant's Jury Trial

¶ 10        In June 2013, defendant's case proceeded to a jury trial. Tiffany Burton testified that as a result of her arrest for delivery of cocaine, she agreed to become a confidential source for the police. On September 19, 2012, Burton met with Todd McClusky, a Bloomington Police Department detective, and informed him that she could buy heroin and crack cocaine from defendant. Burton explained to McClusky that although defendant did not want to "work with [her] directly," Burton would buy drugs from defendant through Rebecca Hatcher, who had a "physical relationship" with defendant.

¶ 11        On September 26, 2012, Burton informed McClusky that she talked with Hatcher about buying heroin from defendant. Burton later received a telephone call from Hatcher, confirming the heroin sale at Hatcher's apartment that afternoon. Burton testified that after detectives drove her to a location near Hatcher's home, Burton walked to the apartment where Hatcher and defendant were waiting. While there, defendant asked whether Burton knew anyone who was interested in buying crack cocaine.

¶ 12        Burton called McClusky and, feigning as if she was speaking to someone else, asked if he was interested in buying crack cocaine. After that conversation ended, Burton informed defendant that her contact was an interested buyer. Burton then handed defendant $500 in

exchange for 2.2 grams of heroin. Per their agreement through Hatcher, Burton then left the apartment and met McClusky, who was parked on a nearby side street.

¶ 13       After delivering the heroin to McClusky, Burton called Hatcher and made arrangements to meet that evening to buy the crack cocaine defendant had mentioned. McClusky drove Burton to a bar located in downtown Bloomington and provided her $120 for the purchase. As Burton waited outside of the bar, she observed Hatcher driving a car with defendant as a front-seat passenger. Burton entered the vehicle and, after riding a short distance, handed defendant $120. Defendant provided Burton 0.9 grams of cocaine. Burton then returned to McClusky and gave him the cocaine.

¶ 14       On October 4, 2012, McClusky recorded a telephone conversation between Burton and defendant in which they arranged another purchase of heroin. Defendant later arrived at the agreed-upon location in a van driven by someone Burton did not recognize. Burton entered the van and provided defendant $500. In return, defendant gave Burton 2.8 grams of heroin. Shortly thereafter, Burton delivered the heroin to McClusky.

¶ 15       On cross-examination, Burton acknowledged the police paid her monetarily as a confidential informant in a number of drug cases and that "the more people [she] got involved, the more money [she] got[.]" She agreed that if she were to be charged and convicted of the crime for which she was initially arrested, it would be a Class X offense for which she would face a prison sentence of between 6 and 30 years. She further agreed that Detective McClusky would "mak[e] sure that [she] d[id]n't get charged and convicted."

¶ 16       Several officers testified regarding the (1) surveillance police conducted on September 26, 2012, and October 4, 2012, (2) chain of custody and processing of evidence police seized, and (3) police procedures employed immediately before and after Burton purchased

cocaine and heroin from defendant. McClusky and Hatcher testified consistently with Burton about the drug purchases that occurred on September 26, 2012, and October 4, 2012. The State further presented (1) a video recording of the drug purchases that occurred on September 26, 2012, and October 4, 2012, (2) an audio recording of the October 4, 2012, telephone conversation Burton had with defendant, and (3) an audio recording of the exchange that occurred in the van. The parties stipulated to the weight of the drugs police seized during the three aforementioned purchases.

¶ 17        On cross-examination, Detective McClusky acknowledged that he did not provide the prosecutor with the report of Burton's initial arrest or the execution of a search warrant of her home. He further acknowledged that officers seized narcotics during the execution of the search warrant of Burton's home. He also agreed that the police department compensated Burton approximately $600 as a confidential informant on a number of drug cases.

¶ 18        After the State's case-in-chief, defendant's trial counsel moved to strike Burton and McClusky's testimony on the basis of a *Brady* violation, asserting he had not received any information concerning the search warrant for Burton's home, return of the search warrant, or documentation of her arrest. Trial counsel further argued it was not until Burton's trial testimony that he learned drugs had been seized from her and that he was entitled to know what drugs, what weights, and the potential sentencing range for the alleged offenses. The trial court denied the motion, concluding defendant was not prejudiced by the alleged *Brady* violation because Burton was thoroughly cross-examined regarding bias and the fact she was eligible for Class X sentencing.

¶ 19        Defendant did not present any evidence.

¶ 20        Following argument, the jury found defendant guilty of counts I, II, and IV. The State had dismissed count III prior to trial because it was a lesser-included offense.

¶ 21                                B. The Sentencing Hearing

¶ 22        At a July 2013 sentencing hearing, the trial court considered defendant's presentence investigation report (PSI), which showed, in part, the following: (1) a 1996 conviction for unlawful use of a weapon (sentenced to 1 year and 25 days in prison); (2) a 1998 conviction for possession of a controlled substance (sentenced to three years in prison and later placed on mandatory supervised release (MSR), which defendant violated within three months); (3) a 1998 conviction for domestic battery (sentenced to 24 months' conditional discharge); (4) a 1999 conviction for two counts of domestic battery (sentenced to three years in prison and later placed on MSR, which defendant twice violated); (5) a 2001 conviction for manufacture-delivery of a controlled substance (sentenced to three years in prison and later placed on MSR, which defendant twice violated); (6) a 2003 conviction for manufacture-delivery of a controlled substance (less than 15 grams of a cocaine analog) (sentenced to six years in prison and later placed on MSR, which defendant violated within eight months); (7) a 2006 conviction for mob action (sentenced to 364 days in jail); and (8) a 2009 conviction for aggravated battery (sentenced to 5½ years in prison and later placed on MSR, which defendant violated within two months).

¶ 23        Defendant presented testimony from John Bricker, a church pastor, and Myles Singleton, a parishioner. Bricker testified he had known defendant for several years and had visited him in prison biweekly. Bricker believed defendant was committed to turning his life around and stated he would act as defendant's "support person" when he returned to the community. Singleton also testified that he had known defendant for several years and visited him in prison with Bricker. Singleton was impressed by defendant's progress while in prison and noted that defendant developed a Christian-based program entitled "Brighter Future: Changing Our Core Beliefs,"

which sought to assist fellow inmates as they transitioned from prison to public life. Singleton believed that defendant was taking active steps to return to the community as a productive citizen.

¶ 24    Prior to sentencing defendant, the trial court acknowledged (1) defendant's PSI, (2) the testimony provided by Bricker and Singleton, (3) defendant's statement in allocution, and (4) counsels' arguments. Noting that both aggravating and mitigating factors existed, the court believed that the aggravating factors outweighed the mitigating factors. Specifically, the court cited defendant's criminal history as the "greatest strike" against defendant.

¶ 25    After summarizing defendant's prior criminal history, the trial court stated as follows:

"It's important for the court to note that in this case [defendant was] discharged from parole on July 27 of 2012. This offense was alleged to have occurred about two months later. As noted in the PSI, as of mid-August *** 2012, [defendant was] using cannabis on a daily basis.

[The court tallies nine] prior felony sentences. If you count all three [convictions in this case], which is 10, 11, and 12, [defendant] is [subject to] mandatory Class X sentencing based upon his prior record to date.

Tied in with that record, as the court has mentioned, are some violent offenses. The unlawful use of weapons as noted by the court, the felony domestic battery from 1999, the 1997 domestic battery[,] which was a misdemeanor offense. Also included within that category was the mob action case and the aggravated battery case as noted by the court."

¶ 26    Thereafter, the trial court sentenced defendant to concurrent terms of 18 years in prison on each count.

¶ 27                              C. The Direct Appeal and Postconviction Proceedings

¶ 28              Defendant appealed, arguing that his 18-year sentence was excessive. *Johnson*, 2015 IL App (4th) 130755-U, ¶ 3. Relevant to this appeal, appellate counsel admitted defendant's sentencing claim was forfeited but argued this court should review the claim for plain error on the ground that sentencing issues are regarded as matters affecting substantial rights, and the trial court failed to accord the proper weight to defendant's evidence in mitigation. *Id.* ¶ 30. This court affirmed, concluding defendant's sentencing claim was forfeited and did not warrant plain-error review because he failed to argue that either "(1) the evidence at sentencing was closely balanced or (2) an error deprived him of a fair sentencing hearing." *Id.* ¶ 31. This court subsequently denied defendant's petition for rehearing.

¶ 29                              1. *The Pro Se Petition and Motion To Withdraw*

¶ 30              In March 2016, defendant *pro se* filed his postconviction petition, alleging, among other things, (1) his appellate counsel was ineffective for failing to properly present his excessive sentence claim by failing to properly articulate the standard for plain-error review and (2) the State violated *Brady* "when it withheld the fact that Tiffany Burton had been arrested and a search warrant issued resulted in drugs being located in her place of residence."

¶ 31              In June 2016, the trial court advanced defendant's petition to the second stage of proceedings and appointed counsel. In January 2017, defendant's postconviction counsel filed a motion to withdraw and for a finding of no merit. Postconviction counsel attached to the motion a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013), stating:

> "1) Undersigned counsel has consulted with [defendant], either by mail or
> in person, to ascertain [his] assertions of deprivation of Constitutional rights
> and has examined the record of proceedings at trial;

      a. Spoke with [defendant] in person on September 26, 2016 and November 18, 2016;

      b. Letters to [defendant] on July 5, 2016 and August 6, 2016;

      c. Letters from [defendant] on July 25, 2016 (1 page), September 27, 2016 (15 pages) and October 9, 2016 (2 pages)

      d. Spoke with [defendant] via telephone conference on November 17, 2016 and January 20, 2017.

2) Undersigned counsel has attempted to make amendments to the *pro se* petition necessary for adequate presentation of [defendant's] proceedings; however, undersigned counsel finds the *pro se* petition to be without merit."

¶ 32      In February 2017, defendant filed a motion for the appointment of new counsel other than the public defender, arguing that postconviction counsel did not provide him with adequate representation because she was previously employed by the McLean County State's Attorney's Office and was therefore laboring under a conflict of interest. Following an April 2017 hearing, the trial court denied defendant's motion for new counsel, finding postconviction counsel was not laboring under a conflict of interest. The court allowed counsel to withdraw and struck counsel's motion for a finding of no merit. Defendant then elected to proceed *pro se*, which the court allowed, and the court ordered the State to file a response to defendant's petition.

¶ 33      2. *The Motion To Dismiss and Response*

¶ 34      In July 2017, the State filed a motion to dismiss defendant's petition, arguing he failed to make a substantial showing of a constitutional violation. Specifically, the State argued defendant (1) presented no evidence he was prejudiced by trial or appellate counsel's representation and (2) failed to meet the materiality requirement with respect to his *Brady* claim.

The State conceded that the Bloomington Police Department knowingly failed to turn over incident reports involving Burton that could have been used as relevant impeachment evidence at trial but argued that this failure did not warrant reversal under *Brady* because it would not have changed the result of defendant's trial.

¶ 35    During a status hearing in August 2017, defendant informed the court that he did not receive all of the discovery from his prior postconviction counsel following her withdrawal. Specifically, defendant stated he did not have complete copies of "[a]ll of the confidential source's agreements or police—the other confidential source plea agreements and warrant, search warrant information and stuff like that." The State mailed defendant additional discovery, which was described as "pages 109 through 121," but at a September 2017, hearing, defendant stated he was still missing "pages 105 through 08," which the State eventually found and turned over to defendant.

¶ 36    In October 2017, defendant filed a response to the State's motion, reiterating his initial claims for relief and raising several new claims. Specifically, defendant argued for the first time that his trial counsel was ineffective for failing to call Shelby Winterland as a witness at trial because she could have testified regarding Burton's motive to lie. Defendant stated that Winterland made contact with him while he was in jail, informing him that Burton planned to lie or do anything she could to keep defendant in prison and away from Winterland because defendant had an affair with Winterland at the same time that he had a "physical relationship" with Burton's friend Hatcher. Defendant further stated Winterland mailed him an affidavit but her letter containing the affidavit was confiscated. Defendant attached to his petition a document titled "Notification of withholding or reading of mail," which was dated January 14, 2013, and stated that mail from Winterland had been confiscated by the McLean County Detention Facility.

¶ 37 Defendant also included several attachments, which were labeled as "newly discovered evidence," consisting of several police incident reports involving Burton. The reports detailed contacts Burton had with the police prior to defendant's trial, describing the following alleged incidents: theft, a domestic altercation, stalking, criminal damage to property, fighting, and possession of a knife. According to the reports, none of the contacts resulted in arrests or criminal charges.

¶ 38                                     3. *Hearing*

¶ 39 At a January 5, 2018, hearing, the trial court granted the State's motion to dismiss. Relevant to this appeal, the court addressed each of defendant's claims as follows:

"With respect to the *Brady* violation claims, here the State has acknowledged that some impeaching information was not produced or withheld with respect to the confidential source. However, it is clear from a review of the trial transcript that [trial counsel] was successfully able to impeach Miss Burton's testimony even without that information. He was able to have her acknowledge that she was not charged as a result of her agreement, that she was provided monetary compensation.

Our Supreme Court has stated with respect to *Brady* violations that three elements are required. One, that the undisclosed evidence is favorable to the accused because it is either exculpatory or impeaching. Two, the evidence was suppressed by the State either willfully or inadvertently, and, three, the accused was prejudiced because the evidence is material to guilt o[r] punishment.

- 11 -

[Defendant] has made the argument today that the court should ignore the third element, that simply because there was evidence that was withheld and it was favorable to him insofar as it was impeaching that he therefore has a constitutional violation. Unfortunately, that is not the state of the law in Illinois. The factor of prejudice is required, and the court finds with respect to the *Brady* violation that [defendant] has not met that third element. Specifically, in this trial there was more than the testimony of Miss Burton that was offered by the State in securing the conviction of [defendant]. There were [*sic*] more than one detective who testified. The stipulation was presented. There was the evidence with respect to the video surveillance.

So with respect to the third element, the court finds because there was sufficient and other evidence relating to his guilt, that he did not suffer prejudice by reason of the *Brady* violation.

Specifically, the court finds the result would not have been different had that information been provided.

I believe that addresses the arguments made in the initial post-conviction petition. As noted by the court, some additional issues were raised in the response to the motion to dismiss. With respect to [trial counsel's] failure to interview and call witnesses, again, as noted by the State, this is a matter within the trial counsel's discretion in terms of trial strategy. However, there have been no affidavits provided by [defendant] to indicate what they could testify to, so at this juncture it's simply a bare

assertion on his part that their testimony would impact the outcome in this case. So, the court finds that this argument is not well taken.

* * *

Finally, with respect to the issue of ineffectiveness of appellate counsel, the court finds that as it is the case with respect to the trial counsel, [defendant] has not met what is required under the *Strickland* standard. *Strickland* provides that a defendant must establish that counsel's performance fell below an objective standard of reasonableness and the defendant was prejudiced by counsel's substandard performance. The long and the short of it either at the trial counsel level or the appellate counsel level, [defendant] has failed to put forth a substantial showing that there would be a different outcome to this trial despite those errors.

So for all those reasons, the State's motion to dismiss will be granted."

¶ 40    After the trial court issued its ruling, the following colloquy occurred:

"DEFENDANT: Did you address the newly discovered evidence?

THE COURT: Just a moment. I'm sorry. You want me to more explicitly address the newly discovered evidence? I can. With respect to that issue, the State has represented that that information was, in fact, provided within the fourth discovery compliance. Even assuming that not to be the case, if, in fact, it was new, the court has addressed some of that information insofar as the information pertaining to Miss Burton would not have made an outcome, the court has found that she was able to be impeached by [trial

counsel] despite not having this information. It would not impact the argument with respect to any perjured testimony. So the court finds with respect to that argument as well [defendant] has not made a substantial showing of a constitutional violation."

¶ 41    This appeal followed.

¶ 42                    II. ANALYSIS

¶ 43    Defendant appeals, arguing the trial court erred by dismissing his petition at the second stage of proceedings because he (1) made a substantial showing of ineffective assistance of appellate counsel, (2) provided adequate documentation to support his ineffective assistance of trial counsel claim, and (3) was denied reasonable assistance of postconviction counsel. We disagree and affirm. We address each of these issues in turn.

¶ 44              A. Postconviction Proceedings in General

¶ 45    The Postconviction Act provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 23, 38 N.E.3d 1256; 725 ILCS 5/122-1 (West 2014). The Postconviction Act contains a three-stage procedure for relief. *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615; 725 ILCS 5/122-2.1 (West 2014). Within the first 90 days after the petition is filed and docketed, the trial court shall dismiss a petition summarily if the court determines it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2014). If the petition is not dismissed as being frivolous or patently without merit, then the trial court orders the petition to be docketed for further consideration. 725 ILCS 5/122-2.1(b) (West 2014).

¶ 46    At the second stage, the trial court appoints counsel, who must then investigate the defendant's claims and make any amendments necessary for an adequate presentation of the

- 14 -

defendant's contentions. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). The State may file a motion to dismiss the petition, and the petition advances to a third-stage evidentiary hearing only if the defendant makes a "substantial showing of a constitutional violation." (Internal quotation marks omitted.) *People v. Johnson*, 2018 IL App (5th) 140486, ¶ 22, 99 N.E.3d 1. We review the trial court's second-stage dismissal of a postconviction petition *de novo*. *People v. Groszek*, 2016 IL App (3d) 140455, ¶ 12, 54 N.E.3d 982.

¶ 47                              B. Ineffective Assistance of Appellate Counsel

¶ 48          Defendant argues the trial court erred by granting the State's motion to dismiss because he made a substantial showing that his appellate counsel was ineffective for failing to argue that his forfeited sentencing claim should be reviewed for plain error on the basis that (1) the evidence was closely balanced or (2) that he was deprived of a fair sentencing hearing. We disagree.

¶ 49                              1. *Ineffective Assistance Claims*

¶ 50          When a defendant raises an ineffective-assistance-of-counsel claim, he must show (1) that counsel's alleged error was objectively unreasonable and (2) a reasonable probability that, but for the error, the results of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984). Appellate counsel is not required to raise every conceivable issue on appeal. *People v. West*, 187 Ill. 2d 418, 435, 719 N.E.2d 664, 674 (1999). In other words, appellate counsel does not err by refraining to raise issues "which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *Id.* Likewise, unless the underlying issue is meritorious, a defendant cannot establish prejudice for counsel's failure to raise the issue on appeal. *Id.*

¶ 51　　　　Therefore, to determine whether defendant made a substantial showing of ineffective assistance of appellate counsel, we first determine whether his excessive sentence claim would have been meritorious had counsel properly argued that it warranted plain error review.

¶ 52　　　　　　　　　　　　　　　2. *This Case*

¶ 53　　　　"The Illinois Constitution provides penalties are to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *People v. Daly*, 2014 IL App (4th) 140624, ¶ 26, 21 N.E.3d 810 (citing Ill. Const. 1970, art. I, § 11). "This constitutional mandate calls for balancing the retributive and rehabilitative purposes of punishment, and the process requires careful consideration of all factors in aggravation and mitigation." *Id.* The trial court has "great discretion *** in each case to fashion an appropriate sentence within the statutory limits." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). "The sentence imposed by the trial court is entitled to great deference and will not be reversed on appeal absent an abuse of discretion." *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494.

¶ 54　　　　Here, defendant did not make a substantial showing that he was denied the effective assistance of appellate counsel. Defendant correctly notes that this court found appellate counsel's plain-error argument was deficient because appellate counsel did not frame the argument under either prong of the plain-error doctrine. See *Johnson*, 2015 IL App (4th) 130755-U, ¶ 31. However, even if appellate counsel had properly argued defendant's sentencing claim warranted plain-error review, there is no reasonable possibility that the outcome of his appeal would have been different.

¶ 55　　　　Defendant was convicted of three counts of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2010)) and, because of his prior criminal record, was subject to mandatory Class X sentencing. See 730 ILCS 5/5-4.5-95(b) (West 2012). A Class X

felony is punishable by a prison sentence of not less than 6 years and not more than 30 years. *Id.* § 5-4.5-25(a). Accordingly, defendant's 18-year concurrent prison sentences fell well within the statutory range. "A sentence within the statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *McGuire*, 2017 IL App (4th) 150695, ¶ 38.

¶ 56        Moreover, the trial court specifically stated it considered defendant's evidence in mitigation but ultimately determined that the evidence in aggravation, particularly defendant's extensive criminal history—consisting of nine prior felonies and multiple failures to comply with the terms of his MSR—far outweighed the mitigating testimony provided by Bricker and Singleton. Defendant presents no evidence in the record indicating the trial court committed any error in sentencing defendant. Because there is no reasonable probability that defendant's excessive sentence claim would have been successful, defendant failed to make a substantial showing that his appellate counsel was ineffective.

¶ 57                C. The Failure To Attach Affidavits or Other Evidence

¶ 58        Defendant next argues the trial court erroneously concluded defendant failed to adequately support his claim that trial counsel was ineffective for failing to call Shelby Winterland as a witness at trial because defendant attached documentation showing that Winterland's affidavit was confiscated by the McLean county jail. We disagree.

¶ 59        Section 122-2 of the Postconviction Act requires that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2014). This requirement ensures that the allegations in the petition are capable of independent corroboration and identifies the "sources,

character, and availability" of evidence alleged to support the petition's allegations. *People v. Allen*, 2015 IL 113135, ¶ 34, 32 N.E.3d 615. A defendant's failure to attach the affidavits or documentation required by section 122-2, or otherwise explain their absence, is "fatal" to his postconviction petition. *People v. Delton*, 227 Ill. 2d 247, 255, 882 N.E.2d 516, 520 (2008) (citing *People v. Collins*, 202 Ill. 2d 59, 66, 782 N.E.2d 195, 198 (2002)). "[W]here a postconviction petitioner raises a claim of ineffective assistance based on counsel's failure to call a witness, an affidavit from the proposed witness will be required if it is essential for the postconviction petitioner to make the necessary 'substantial showing' to support a claim of ineffective assistance." *People v. Dupree*, 2018 IL 122307, ¶ 34, 124 N.E.3d 908.

¶ 60    Here, the trial court correctly found that defendant failed to provide adequate documentation in support of his ineffective assistance of counsel claim. Defendant does not dispute that he did not provide an affidavit from Winterland. Rather, in his reply to the State's motion to dismiss, defendant explained that he attempted to procure an affidavit from Winterland but that it was confiscated by the McLean County Detention Facility. In support of this claim, defendant attached a document titled "Notification of withholding or reading of mail," which was dated January 14, 2013, and stated that mail from Winterland had been confiscated. This explanation is insufficient.

¶ 61    First, it is not apparent from the notification that the confiscated mail from Winterland even contained an affidavit. Second, even assuming her affidavit was confiscated, the notice was dated January 2013—three months prior to his June 2013 jury trial and more than three years before he filed his postconviction petition in March 2016. Defendant does not claim he attempted to obtain a replacement affidavit from Winterland, or explain why any subsequent efforts to do so were unsuccessful—despite the fact that she was apparently willing to provide one

and he ostensibly had her contact information. Defendant's bare assertion that Winterland would have testified regarding Burton's motive to lie due to defendant's alleged affair with Winterland was insufficient to make a substantial showing of ineffective assistance of trial counsel.

¶ 62 Even if we accepted defendant's explanation for the absence of Winterland's affidavit, he did not make a substantial showing of ineffective assistance of trial counsel. First, defendant did not explain how Winterland knew that Burton planned to lie or "do anything" to keep defendant in jail. Additionally, defendant did not overcome the strong presumption that counsel's decision not to call Winterland as a witness constituted a valid trial strategy: Burton testified that she only had a "business" relationship with defendant and that it was Hatcher who was involved with defendant "physically." Accordingly, it would not have been objectively unreasonable for trial counsel to conclude that Winterland's proposed testimony would have had little impeachment value at trial.

¶ 63 Moreover, defendant was not prejudiced by counsel's failure to call Winterland as a witness at trial. The State presented overwhelming evidence of defendant's guilt, including the following: (1) surveillance police conducted on September 26, 2012, and October 4, 2012; (2) chain of custody and processing of evidence police seized; (3) police procedures employed immediately before and after Burton purchased cocaine and heroin from defendant; (4) testimony from McClusky and Hatcher concerning the drug purchases that occurred on September 26, 2012, and October 4, 2012, that were consistent with Burton's testimony; (5) a video recording of the drug purchases that occurred on September 26, 2012, and October 4, 2012; and (6) audio recordings of (i) the October 4, 2012, telephone conversation Burton had with defendant and (ii) the exchange that occurred in the van. Given this plethora of evidence, no reasonable

probability exists that the outcome of defendant's trial would have been different had Winterland testified regarding Burton's motive to lie.

¶ 64 D. Unreasonable Assistance of Postconviction Counsel

¶ 65 Finally, defendant argues this court should remand for the appointment of new counsel because his postconviction counsel failed to provide him with reasonable assistance in violation of Rule 651(c). We disagree.

¶ 66 1. *Right to Reasonable Assistance*

*¶ 67* The right to counsel in postconviction proceedings is statutory rather than constitutional, and therefore a defendant is entitled only to the level of assistance guaranteed by the Postconviction Act. *People v. Greer*, 212 Ill. 2d 192, 203-04, 817 N.E.2d 511, 518-19 (2004). The Illinois Supreme Court has determined that the Postconviction Act and Rule 651 require appointed counsel to provide only reasonable assistance, a lower standard than that which the constitution requires at trial. *People v. Kuehner*, 2015 IL 117695, ¶ 15, 32 N.E.3d 655. Rule 651(c) outlines certain duties that postconviction counsel must perform in order to provide reasonable assistance. *Id.* Counsel must (1) consult with the defendant to determine the issues defendant wants to raise, (2) examine the record of the proceedings in the trial court, and (3) make any amendment to the petition necessary to adequately preserve defendant's contentions. *Id.* However, postconviction counsel is not required to present frivolous or meritless claims and must withdraw if counsel cannot advance any arguably meritorious claims. *Id.* Our review of an attorney's compliance with Rule 651(c) is *de novo*. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 17, 974 N.E.2d 813.

*¶ 68* Counsel's filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Blanchard*, 2015 IL App

(1st) 132281, ¶ 16, 43 N.E.3d 1077. Here, counsel filed a Rule 651(c) certificate along with her motion for a finding of no merit. Accordingly, we presume that defendant received the representation required by the rule, and it is defendant's burden to overcome this presumption by demonstrating postconviction counsel's failure to substantially comply with Rule 651(c). *Id.*

¶ 69                                2. Brady *Claims*

¶ 70        "Under *Brady*, the State violates a defendant's right to due process by failing to disclose evidence that is favorable to the accused and material to either guilt or punishment." *People v. Roman*, 2016 IL App (1st) 141740, ¶ 17, 67 N.E.3d 987. To succeed on a *Brady* claim, a defendant must demonstrate that "(i) the undisclosed evidence favors the accused as exculpatory or for impeachment purposes; (ii) the State willfully or inadvertently suppressed the evidence; and (iii) the accused was prejudiced because the evidence was material to guilt or punishment." *Id.*

¶ 71        Under the third prong of *Brady*, "[e]vidence is material if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed." *People v. Beaman*, 229 Ill. 2d 56, 74, 890 N.E.2d 500, 510 (2008). "Materiality is demonstrated 'by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *People v. Coleman*, 183 Ill. 2d 366, 393, 701 N.E.2d 1063, 1077 (1998) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

¶ 72                                3. *This Case*

¶ 73        Defendant argues that postconviction counsel did not comply with Rule 651(c) because the State did not turn over potential impeachment evidence regarding Burton's arrest and the execution of a search warrant at her home until after the trial court allowed defendant to proceed *pro se*, and therefore, she did not possess sufficient information to assess the merits of his

*Brady* claim. We disagree. The record shows defendant's trial counsel raised the *Brady* issue following the State's presentation of evidence. The trial court determined that defendant was not prejudiced by the State's failure to disclose this evidence because defense counsel was able to effectively cross-examine Burton regarding potential bias, monetary compensation, and that she was eligible for Class X sentencing. The mere fact that defendant did not receive copies of this discovery until after postconviction counsel's withdrawal does not persuade that she did not possess sufficient information to determine his claim was ultimately meritless due to the lack of prejudice. Significantly, the trial court noted that the allegedly undisclosed materials were, in fact, provided to defendant during the fourth discovery compliance prior to trial. Accordingly, we do not conclude that defendant has overcome the presumption of counsel's compliance with Rule 651(c).

¶ 74　　　　Defendant also alleges that postconviction counsel did not provide reasonable assistance because she "followed the wrong standard in arguing *** [defendant's] claim regarding the *Brady* violation, resulting in [defendant] being forced to proceed *pro se* on his meritorious claim." We disagree. Postconviction counsel, in her motion for a finding of no merit, stated the following: "[T]his court has repeatedly stressed that a hearing is required whenever the petitioner makes a *substantial showing* (emphasis added) of a violation of constitutional rights. [Citations.] To accomplish this, the allegations in the petition must be supported by the record in the case or by its accompanying affidavits." Although counsel did not reiterate this standard in discussing the *Brady* claim, postconviction counsel discussed all of the elements of *Brady* and concluded that, based on her review of the record, he failed to demonstrate he was prejudiced by the State's failure to disclose potential impeachment evidence. There is no evidence that counsel followed an

incorrect standard and defendant has failed to overcome the presumption that she provided reasonable assistance under Rule 651(c).

¶ 75 Moreover, we agree with the trial court that, assuming the State failed to disclose some of the relevant impeachment evidence regarding Burton, defendant's *Brady* claim nonetheless fails because there is no probability that the outcome of defendant's trial would have been different had the material been disclosed. Trial counsel elicited significant impeachment evidence from Burton during cross-examination. First, Burton admitted that, if charged, her offense would have been a Class X felony and faced 6 to 30 years in prison. She also admitted that Detective McClusky told her he would ensure that she was not charged and that she was paid in exchange for acting as a confidential informant in a number of cases. Furthermore, Detective McClusky admitted on cross-examination that there were many items seized during the execution of the search warrant of Burton's home which were placed into evidence. Accordingly, trial counsel had ample opportunity to impeach Burton, and any additional impeachment evidence would not have impacted the outcome of defendant's trial.

¶ 76 In conclusion, we would like to commend the trial court for its detailed analysis of the issues presented in defendant's petition during the motion to dismiss hearing, which we found helpful in resolving this appeal.

¶ 77                                    III. CONCLUSION

¶ 78 For the reasons stated, consistent with Illinois Supreme Court Rule 23(b) (eff. Apr. 1, 2018), we affirm the trial court's judgment.

¶ 79 Affirmed.